LAURA E. DUFFY
United States Attorney
DIANNE M. SCHWEINER
Assistant U.S. Attorney
Cal. State Bar No. 188013
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-7654
Facsimile: (619) 546-7751
Email: dianne.schweiner@usdoj.gov

Attorneys for Defendant
RAYMOND E. MABUS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE CONFORTO,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>RAYMOND E. MABUS, Secretary Department of the Navy<br><br>　　　　　Defendant. | Case No.: 12cv1316-W (BLM)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL THE INDEPENDENT PSYCHIATRIC EXAMINATION OF PLAINTIFF |

Defendant, Raymond Mabus, Secretary of the Department of the Navy, hereby respectfully submits his Memorandum of Points and Authorities in support of his Motion to Compel the Independent Psychiatric Examination of the Plaintiff, Marie Conforto.

**I.**

**<u>INTRODUCTION</u>**

The Plaintiff in this action is suing the Department of the Navy for gender discrimination, age discrimination, and retaliation under Title VII. Plaintiff alleges that while she worked for the Navy's Material Management Division, her assigned parking space was improperly taken away, she was denied the opportunity to attend an out-of-

1

state training conference, and that she was improperly issued a Letter of Reprimand and a Proposed Suspension by her supervisors. (Doc. No. 1, Plaintiff's Complaint). Plaintiff retired from her employment with the Navy on December 31, 2011, before the proposed suspension took effect. Plaintiff now claims she was constructively discharged due to harassment and discrimination by her supervisors.

In addition to lost wages and retirement benefits, Plaintiff has alleged a whole host of emotional distress related damages against the Navy. In addition to seeking monetary compensation for emotional distress, Plaintiff has designated three health care providers to opine on the toll her supervisors' alleged improper conduct has taken on her mental state and emotional condition. For these and other reasons, Defendant's retained expert psychiatrist, Alan Abrams, M.D., has requested that he be allowed to conduct an Independent Psychiatric Examination (IPE) of the Plaintiff in order to fully prepare his opinions in this matter. Plaintiff and her counsel have refused to submit to such an examination, thereby rendering the instant motion to compel necessary.

## II.

## RELEVANT LAW

Federal Rule of Civil Procedure 35 provides that a court may order a party to submit to a mental examination by a suitable licensed or certified examiner when: (1) a party's mental condition is "in controversy" and (2) "good cause" exists for ordering the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 117 (1964).

A plaintiff puts her mental or physical condition "in controversy" by claiming injury thereto resulting from defendant's acts. *Id.* at 119. Some examples of a plaintiff putting her mental condition in controversy include allegations of severe emotional distress, a claim of some specific mental or psychiatric injury resulting from such distress, and situations where a plaintiff designates an expert witness to testify to such distress. *Turner v. Imperial Stores*, 161 F.R.D. 89, 92-98 (S.D. Cal. 1995). Some courts hold that a claim of emotional distress as a component of damages is enough by itself to put a plaintiff's mental condition "in controversy" within the meaning of Rule 35(a)(1).

*Nuskey v. Lambright*, 251 F.R.D. 3, 7-8 (D.D.C. 2008) (finding that a plaintiff's claim of damages triggers an employer's interest in an IME ); *see also Jansen v. Packaging Corp. of Am.*, 158 F.R.D. 409, 410 (N.D. Ill. 1994) (holding that the "in controversy" requirement is met when a plaintiff claims intangible harms as part of her damages claim due to alleged sexual harassment).

The "good cause" requirement generally requires a showing of facts justifying the discovery, i.e. allegations showing the need for the information sought and lack of means for obtaining it elsewhere. *Schlagenhauf v. Holder* 379 US 104, 114-122 (1964). To establish good cause exists for an independent examination by a defense expert, relevant factors courts consider include the availability of obtaining the desired information by other means, whether plaintiff plans to prove her claim through the testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress. *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161 (N.D. Cal. 2013). Courts have also found good cause when a plaintiff's medical records are lacking and are insufficient for defendant to determine the nature and extent of the injuries. <u>*Nguyen v. Qualcomm Inc.*</u>, CIV. 09 2013 WL 3353840 (S.D. Cal. July 3, 2013), *citing Doe v. District of Columbia,* 229 F.R.D. 24, 27 (D.D.C. July 21, 2005). Also, courts have held an employee who seeks compensatory damages for emotional pain suffered as a result of an employer's action has placed the existence and extent of their alleged mental injury in controversy, giving the employer good cause to seek an independent examination. *Nuskey v. Lambright*, 251 F.R.D. 3, 7-8 (D.D.C. 2008).

### III.

### PLAINTIFF HAS PLACED HER MENTAL CONDITION IN CONTROVERSY AND GOOD CAUSE EXISTS FOR CONDUCTING AN IPE

Throughout the course of this litigation, Plaintiff and her counsel have made clear their intention to seek emotional distress damages from the Navy, and their intent to use expert testimony on this subject. Below are the specific allegations made by Plaintiff which clearly place her mental condition in controversy in this case.

### A. Allegations in Plaintiff's Complaint

In her Complaint filed June 1, 2012, Plaintiff alleges the following facts with respect to her claim for emotional distress damages:

- Plaintiff requests relief….for compensatory damage as allowed by law for losses resulting from humiliation, mental anguish, and emotional distress. (Doc. No. 1, 9:21-25);

- Plaintiff was forced to retire due to the hostile environment created by Defendant. (Doc. No. 1, 4:22-25);

- The hostile work environment caused Plaintiff anxiety, panic attacks, depression, stress, daily crying spells, sleeplessness, increased appetite or decreased appetite causing fluctuations in her weight, elevated blood pressure that included an increase in her blood pressure medication, and general deterioration of her health. (Doc. No. 1, 4:11-17);

- Defendant's treatment towards Plaintiff at work also caused her to see a psychiatrist due to work-related stress. (Doc. No. 1, 4:17-19);

- Plaintiff suffers and continues to suffer embarrassment, humiliation and mental anguish under all three causes of action. (Doc. No. 6:20-25; 8:2-7; 9:9-14).

### B. Allegations in Plaintiff's Initial Disclosures

In Plaintiff's Initial Disclosures served on January 21, 2014, Plaintiff's counsel stated that Plaintiff is seeking $378,000 in lost wages, $1,000 in out-of-pocket medical expenses, $7,875 in sick leave time, and stated that Plaintiff is seeking damages for anxiety, panic attacks, depression, stress, daily crying spells, sleeplessness, increased/decreased appetite, elevated blood pressure, and overall deterioration of her health.  Counsel also states that Defendant's treatment of Plaintiff caused her to see a psychiatrist and other doctors due to work-related stress, and that Plaintiff was forced to retire due to Defendant's discrimination and harassment.  Counsel listed three health care providers, including a psychologist, in the Initial Disclosures served on behalf of his client. (Exhibit A).

### C. Plaintiff's Expert Witness Disclosures

On May 2, 2014, Plaintiff's counsel served Expert Witness Disclosures wherein he listed three treating providers who will testify as to Plaintiff's mental condition:  (1) a clinical psychologist (Summer Schleif, Ph.D.) (erroneously listed by Plaintiff's counsel as

4

a medical doctor), (2) a medical doctor (Jorge Carrera, M.D.), and (3) a chiropractor (Rahmanian Omead). Counsel stated that all three providers are expected to testify "as to Plaintiff's mental state/condition" and that "Plaintiff was under their care." (Exhibit B).

**D.    Plaintiff's Refusal to Provide Medical Authorizations and Medical Records**

After receiving Plaintiff's Initial Disclosures, the prior AUSA handling this matter (Laura Grimes, Esq.) requested that Plaintiff's counsel provide written authorizations from Plaintiff releasing her medical records from the three providers listed so that the U.S. Attorney's Office could obtain the records under subpoena. (Exhibit C, Grimes letter to Smee dated February 10, 2014). It has been the experience of defense counsel that the majority of health care providers will not release medical or psychological records without a signed Authorization by the Plaintiff. After Mr. Smee refused to provide Authorizations signed by his client and initially refused to provide any records in her possession citing to Plaintiff's "right to privacy," Ms. Grimes met and conferred with Mr. Smee regarding this matter by telephone. (Schweiner Decl.). After those attempts were unsuccessful, Ms. Grimes sent another letter to Mr. Smee on March 20, 2014 providing him with the relevant law explaining that by suing the Navy for emotional distress, Plaintiff has put her mental state at issue and has waived her right to privacy in her medical records. (Exhibit D, Grimes letter to Smee dated March 20, 2014). Mr. Smee still refused to provide either records or signed Authorizations by his client, which sparked Ms. Grimes to serve Requests for Production of Documents on Mr. Smee asking for all medical records in the possession of his client.

On April 2, 2014, this case was transferred to the undersigned due to Ms. Grimes' departure from the U.S. Attorney's Civil Division. After reviewing the history of Ms. Grimes' unsuccessful attempts to secure Authorizations or records from Mr. Smee, the undersigned immediately served subpoenas on all three of Plaintiff's health care providers in the hopes they would provide the records without a signed Authorization by Plaintiff. (Schweiner Decl.). In the meantime, Mr. Smee asked the undersigned for an extension of time to produce medical records responsive to Ms. Grimes' Requests for Production of

Documents, and that request was granted. (Schweiner Decl.). Mr. Smee ultimately produced some medical records that were in Plaintiff's possession but defense counsel believes these records are not complete.

### E. Incomplete Records Received Under Subpoena

After defense counsel subpoenaed records from Plaintiff's three providers, she was informed that one provider lost his records (Dr. Omead) and that another gave all his original records to the Plaintiff without keeping copies (Dr. Carrera). (Schweiner Decl.). The only records defense counsel was able to obtain under subpoena were those of Plaintiff's psychologist, Summer Schleif. *Id.*

### F. Defense Expert's Request for Independent Psychiatric Examination

Upon receiving and reviewing the records provided by Dr. Schleif and the Plaintiff, Defendant's retained psychiatric expert (Alan Abrams, M.D.) requested that he be allowed to conduct an IPE of the Plaintiff and communicated this request to defense counsel. (Schweiner Decl.). As explained in his first expert witness report (attached as Exhibit E), Dr. Abrams justified his request for an IPE as follows:

> It is my understanding that plaintiff is unwilling to agree to an IPE. Without an IPE, my opinions must be considered as lacking the important direct clinical data that an IPE would provide. The psychological records from Summer Schleif, Psy.D. are extremely superficial and cursory, and provide no meaningful objective information regarding Ms. Conforto's mental status. Ms. Conforto's medical records back to 2000, or earlier should be obtained to fully assess her long-standing or chronic medical problems. (Exhibit E, Dr. Abrams' Report, page 1).
>
> I believe that based on the records there is no validity to Ms. Conforto's claims of emotional damage due to unlawful behaviors on the part of her supervisors at her workplace. An IPE would be necessary to provide fuller details that might not be contained in the records reviewed. . . . if plaintiff agrees to an IPE, I will amend any opinions as indicated as additional information is received. (Exhibit E, Dr. Abrams' Report, page 7).

### G. Plaintiff's Refusal to Submit to an Independent Psychiatric Examination

On June 12, 2014, the day before the first expert witness reports were due to be exchanged, defense counsel contacted Mr. Smee and again asked that his client agree to an IPE with Dr. Abrams as well as a short extension of time for the expert witness disclosure deadline so that Dr. Abrams could include any findings from the IPE in his

6

first report.  Mr. Smee declined to allow the IPE, citing as his sole reason the fact that another lawyer in the U.S. Attorney's Office (Katie Parker) recently denied a request by another lawyer in Mr. Smee's office (Ken Baisch) to reopen discovery that had already closed in a case those two lawyers are litigating.  (Schweiner Decl.).  Defense counsel explained to Mr. Smee that something that occurred between two other lawyers on a completely unrelated case had nothing to do with Defendant's request for an IPE in this case.  (Schweiner Decl., and Exhibit F, Schweiner letter to Smee dated June 13, 2014).  On June 13, 2014, the day expert reports were due to be exchanged, Mr. Smee faxed a letter to Ms. Schweiner simply confirming that he would not agree to extend the expert witness report deadline, but mentioning nothing about the IPE or his earlier-stated reason for denying Defendant's requests based on something that occurred in unrelated litigation.  (Exhibit G, Smee letter to Schweiner dated June 13, 2014).  Defense counsel proceeded to timely produce expert witness reports on June 13, 2014.  (Exhibit E).

**H.    Counsel's Meet and Confer Efforts**

On June 18, 2014, counsel met and conferred regarding this matter in the offices of Grady & Associates as required by the Court's chamber rules relating to discovery disputes.  (Schweiner Decl.).  Defense counsel again asked Mr. Smee if he had any legal basis for denying Dr. Abrams' request for an IPE.  (Schweiner Decl.).  No such legal basis was communicated; rather, Mr. Smee simply stated that an IPE was "not in the best interests of his client" and that he "wanted to see what the Court would decide on this issue" before agreeing to an IPE.  (Schweiner Decl.).

On June 19, 2014, both counsel participated in a telephone conference regarding this dispute with Magistrate Judge Major's law clerk, Brittany.  Mr. Smee was again asked for any legal basis to deny Defendant's request for an IPE.  Mr. Smee stated two reasons:  (1) that the discovery cut-off was August 29th and he was concerned he would not have enough time to conduct any additional discovery that may flow from Dr. Abrams' supplemental report, if there is one; and (2) Defendant's first expert witness reports were served late, i.e. on Saturday, June 14th instead of Friday, June 13th.

7

With regard to the discovery cut-off, defense counsel informed Brittany and Mr. Smee that an IPE by Dr. Abrams had already been noticed for July 21, 2014 (see Exhibit H), and that any additional opinions he may have after the examination could be submitted within a week. (Schweiner Decl.). That would leave more than a month left before the discovery cut-off. Defense counsel also fails to see how any additional discovery would need to be conducted after the IPE even if Dr. Abrams formed additional opinions. Plaintiff's designated experts are non-retained, and they provided no disclosures whatsoever under Rule 26(a)(2)(C). Therefore, Plaintiff's treaters will not be allowed to review any of Dr. Abrams' reports or opine on those reports in any event. And, certainly no new percipient witnesses will be identified in Dr. Abrams' supplemental report so no additional depositions should need to be taken.

With regard to counsel's suggestion that Defendant's first expert reports were served late, defense counsel confirmed to both Mr. Smee and Brittany that the expert reports were timely mailed on the deadline, June 13th, which is reflected in both the Proof of Service sent with the reports and the postmark on the envelope sent to Mr. Smee. (Schweiner Decl.). Defense counsel erroneously misdated her cover letter that accompanied the reports and listed June 14th on the letter instead of June 13th. *Id.* In any event, the service of Defendant's expert witness reports has nothing to do with Defendant's request for an IPE from Plaintiff.

As Mr. Smee has still failed to articulate any legal basis for blocking Dr. Abrams' IPE, defense counsel is forced to bring the instant motion to compel. The above-stated facts demonstrate that Plaintiff has placed her mental condition in controversy, and that good cause exists for the IPE especially in light of the fact Plaintiff has designated three treaters to opine on her mental state, she is claiming continuing and severe emotional distress, and records are missing in this case. Plaintiff will not be prejudiced by attending an IPE and in fact, Defendant will be prejudiced if she does not since Dr. Abrams will be the only expert witness denied the opportunity to evaluate the Plaintiff in person.

## IV.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests the Court order Plaintiff to attend an IPE on July 21, 2014 at 9:00 a.m. in the offices of defense expert Alan Abrams, M.D.  The scope of the examination is outlined in the Notice of Independent Psychiatric Examination attached hereto as Exhibit H.  As this motion demonstrates, Plaintiff has clearly placed her mental condition in controversy and good exists for this examination.  Plaintiff's counsel has failed to articulate any prejudice to Plaintiff or any legitimate reason for refusing this examination.

DATED:     June 23, 2014                                  Respectfully submitted,

                                                          LAURA E. DUFFY
                                                          United States Attorney


                                                           *s/ Dianne M. Schweiner*
                                                          DIANNE M. SCHWEINER
                                                          Assistant United States Attorneys
                                                          Attorneys for Defendant
                                                          RAYMOND E. MABUS