LAURA E. DUFFY
United States Attorney
DIANNE M. SCHWEINER
Assistant U.S. Attorney
Cal. State Bar No. 188013
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893
Telephone: (619) 546-7654
Facsimile: (619) 546-7751
Email: dianne.schweiner@usdoj.gov

Attorneys for Defendant
RAYMOND E. MABUS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIE CONFORTO,<br><br>                    Plaintiff,<br><br>          vs.<br><br>RAYMOND E. MABUS, Secretary Department of the Navy<br><br>                    Defendant. | Case No.: 12cv1316-W (BLM)<br><br>DECLARATION OF DIANNE SCHWEINER IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL THE INDEPENDENT PSYCHIATRIC EXAMINATION OF PLAINTIFF (AND CERTIFICATE OF COMPLIANCE WITH MEET AND CONFER REQUIREMENT UNDER CIVIL RULE 26.1) |

I, Dianne Schweiner, declare under penalty of perjury as follows:

1.     I am an attorney licensed to practice before all the courts of the State of California and am an Assistant United States Attorney for the Southern District of California, attorneys of record for Defendant Raymond Mabus, Secretary of the Department of the Navy in this matter.  If called as a witness to testify, I could and would competently testify to the matters stated herein.

2.     Attached as Exhibit "A" is a true and correct copy of Plaintiff's Initial Disclosures served on January 21, 2014.

1

3.     Attached as Exhibit "B" is a true and correct copy of Plaintiff's Expert Witness Disclosures received by my office on May 2, 2014.  Plaintiff's expert disclosures list three treating providers who will testify as to Plaintiff's mental condition.

4.     In April 2014, the prior AUSA handling this case (Laura Grimes, Esq.) left the U.S. Attorney's Civil Division and this case was transferred to me.  At that time, Ms. Grimes informed me that Garrett Smee denied her request for signed Authorizations from the Plaintiff, and initially denied her request for any medical records in Plaintiff's possession due to Plaintiff's alleged "right to privacy" in those records.

5.     On February 10, 2014, Ms. Grimes sent a letter (through her paralegal) to Mr. Smee formally requesting that the Plaintiff sign the enclosed Authorizations for the release of her medical/psychological records from the three treating physicians identified in Plaintiff's Initial Disclosures.  It has been the experience of our office that the majority of health care providers will not release medical or psychological records without a signed Authorization by the Plaintiff.  Attached as Exhibit "C" is a true and correct copy of Ms. Grimes' letter to Mr. Smee dated February 10, 2014.

6.     After Mr. Smee continued to refuse to provide Authorizations signed by his client or any records in her possession, I am informed that Ms. Grimes met and conferred with Mr. Smee regarding this matter by telephone.   After those attempts were unsuccessful, Ms. Grimes sent another letter to Mr. Smee on March 20, 2014 providing him with the relevant law explaining that by suing the Navy for emotional distress, Plaintiff has put her mental state at issue and has waived her right to privacy in her medical records.  Attached as Exhibit "D" is a true and correct copy of Ms. Grimes' letter to Mr. Smee dated March 20, 2014.

7.     Mr. Smee still refused to provide either records or signed Authorizations by his client, which sparked Ms. Grimes to serve Requests for Production of Documents on Mr. Smee on March 25, 2014 asking for all medical records in the possession of his client.

2

8.     After reviewing the history of Ms. Grimes' unsuccessful attempts to secure Authorizations or records from Mr. Smee, I immediately served subpoenas on all three of Plaintiff's health care providers in the hopes they would provide the records without a signed Authorization by Plaintiff.

9.     At the end of April 2014, Mr. Smee apparently had a change of heart with respect to producing records in the possession of his client and asked me for an extension of time to produce those records responsive to Ms. Grimes' Requests for Production of Documents.  I granted his request for an extension, and Mr. Smee ultimately produced some medical records that were in Plaintiff's possession but I do not believe these records constitute all of Plaintiff's medical and/or psychological records.

10.     After I subpoenaed records from Plaintiff's three providers, I was informed by the attorney service handling the subpoenas that one provider lost his records (Dr. Omead) and that another gave all his original records to the Plaintiff without keeping copies (Dr. Carrera).  The only records I was able to obtain under subpoena were those of Plaintiff's psychologist, Summer Schleif.

11.     Upon receiving the records provided by Dr. Schleif and the Plaintiff, I promptly forwarded them to Defendant's two retained experts (Alan Abrams, M.D. and Eduardo Grunvald, M.D.).  After reviewing same, Dr. Abrams contacted me on or about June 6, 2014 requesting that he be allowed to conduct an IPE of the Plaintiff.  Dr. Abrams explained in his first expert witness report his justification for wanting to conduct an IPE as follows:

> It is my understanding that plaintiff is unwilling to agree to an IPE. Without an IPE, my opinions must be considered as lacking the important direct clinical data that an IPE would provide. The psychological records from Summer Schleif, Psy.D. are extremely superficial and cursory, and provide no meaningful objective information regarding Ms. Conforto's mental status. Ms. Conforto's medical records back to 2000, or earlier should be obtained to fully assess her long-standing or chronic medical problems.  (Dr. Abrams' Report, page 1).

I believe that based on the records there is no validity to Ms. Conforto's claims of emotional damage due to unlawful behaviors on the part of her supervisors at her workplace. An IPE would be necessary to provide fuller details that might not be contained in the records reviewed. . . . if plaintiff agrees to an IPE, I will amend any opinions as indicated as additional information is received.  (Dr. Abrams' Report, page 7).

Attached as Exhibit E is a true and correct copy of Dr. Abrams' first expert witness report, as well as that of Dr. Grunvald.

12.    On June 12, 2014, the day before the first expert witness reports were due to be exchanged, I contacted Mr. Smee and again asked that his client agree to an IPE with Dr. Abrams as well as a short extension of time for the expert witness disclosure deadline so that Dr. Abrams could include any findings from the IPE in his first report.  Mr. Smee declined to allow the IPE, citing as his sole reason the fact that another lawyer in the U.S. Attorney's Office (Katie Parker) recently denied a request by another lawyer in Mr. Smee's office (Ken Baisch) to reopen discovery that had already closed in a case those two lawyers are litigating.

13.    I explained to Mr. Smee that something that occurred between two other lawyers on a completely unrelated case had nothing to do with Defendant's request for an IPE in this case.  Mr. Smee indicated he would be putting his position in writing and faxing a letter to me later that day.

14.    The following day, June 13, 2014 (the day expert reports were due to be exchanged), Mr. Smee faxed a letter to me simply confirming that he would not agree to extend the expert witness report deadline.  Mr. Smee mentioned nothing about the IPE or his stated reason for denying Defendant's requests based on something that occurred in unrelated litigation.  Attached as Exhibit G is a true and correct copy of Mr. Smee's letter to me dated June 13, 2014.

15.    On the same day, I sent a letter to Mr. Smee memorializing our conversation the prior day and his sole stated reason for denying my request for an IPE.  Attached as Exhibit F is a true and correct copy of my letter to Mr. Smee dated June 13, 2014.

16.    I proceeded to timely mail both of Defendant's expert witness reports to Mr. Smee on June 13, 2013 pursuant to the Court's existing deadlines.  Attached as Exhibit E are true and correct copies of Defendant's expert reports, with accompanying Proof of Service, which outline the experts' concerns over missing records and the need for an independent examination.

17.    On June 18, 2014, I met and conferred regarding this matter in the offices of Grady & Associates as required by the Court's chamber rules relating to discovery disputes.  During that meeting I again asked Mr. Smee if he had any legal basis for denying Dr. Abrams' request for an IPE, other than the situation he cited which occurred between other lawyers in unrelated litigation.  At no time did Mr. Smee provide any legal basis for his objections, other than to say an IPE was "not in the best interests of his client" and that he "wanted to see what the Court would decide on this issue" before agreeing to an IPE.

18.    On June 19, 2014, both myself and Mr. Smee participated in a telephone conference regarding this dispute with Magistrate Judge Major's law clerk, Brittany.  Mr. Smee was again asked for any legal basis to deny Defendant's request for an IPE.  Mr. Smee stated two reasons:  (1) that the discovery cut-off was August 29th and he was concerned he would not have enough time to conduct any additional discovery that may flow from Dr. Abrams' supplemental report, if there is one; and (2) Defendant's first expert witness reports were served late, i.e. on Saturday, June 14th instead of Friday, June 13th.

19.    With regard to the discovery cut-off, I informed Brittany and Mr. Smee that an IPE by Dr. Abrams had already been noticed for July 21, 2014 and that any additional opinions he may have after the examination could be submitted within a week.  That would leave more than a month left before the discovery cut-off.

20.    I also clarified with Mr. Smee and Brittany that Defendant's expert reports were timely mailed on the deadline, June 13th, which is reflected in both the Proof of Service sent with the reports and the postmark on the envelope sent to Mr. Smee.  I

12cv1316-W (BLM)

erroneously dated my cover letter that accompanied the expert reports as June 14th instead of June 13th, but the letter, the reports and the Proof of Service were all timely mailed on June 13th.

21.     Attached as Exhibit "H" is a true and correct copy of the Notice of Independent Psychological Examination also served by my office on June 13, 2014, noticing Ms. Conforto's examination with Dr. Abrams for July 21, 2014 at 9:00 a.m.

I declare, under the laws of the United States, that the foregoing is true and correct. Executed this 23rd day of June, 2014.


                                        *s/ Dianne Schweiner*
                                        Dianne Schweiner

6

# EXHIBIT "A"

1 DENNIS M. GRADY, ESQ.  Bar No. 118461
  Email: gradyfedonly@msn.com
2 SCOTT L. ZIELINSKI, ESQ. Bar No. 218742
  Email: gradyfedonly@msn.com
3 GRADY AND ASSOCIATES
  3517 Camino Del Rio South, Suite 400
4 San Diego, California  92108
  Telephone:  (619) 528-2530
5
  Attorneys for Plaintiff,
6 MARIE CONFORTO

7                    UNITED STATES DISTRICT COURT

8                  SOUTHERN DISTRICT OF CALIFORNIA

9

10 MARIE CONFORTO,                    ) Case No. 12cv1316-W (BLM)
                                     )
11           Plaintiff,              )
                                     )
12 vs.                               ) **PLAINTIFF'S INITIAL DISCLOSURES**
                                     )
13                                   )
  RAYMOND E. MABUS, SECRETARY,       )
14 DEPARTMENT OF THE NAVY,           )
                                     )
15           Defendants.             )
                                     )
16                                   )
                                     )
17 _____)

18     Plaintiff MARIE CONFORTO ("CONFORTO" or "Plaintiff") respectfully

19 submits the following Initial Disclosures under Federal Rule of

20 Civil Procedure 26(a)(1).

21     A.    WITNESSES

22     1.    Marie Conforto, Plaintiff - Ms. Conforto will testify to the

23           issues raised by Plaintiff in her complaint, not only as to

24           liability but to damages as well.

25     2.    LCDR Michael John Grande, first line supervisor - LCDR

26           Grande will testify to the issues raised by Plaintiff in her

27           complaint as a percipient witness.

28 ///

                                    1

1  3.  Captain John Wayne LeFavour, second line supervisor -
2      Captain LeFavour will testify to the issues raised by
3      Plaintiff in her complaint as a percipient witness.
4  4.  LCDR Marla Davida McClellan, interim DH and interim first
5      line supervisor - LCDR McClellan will testify to the issues
6      raised by Plaintiff in her complaint as a percipient
7      witness.
8  5.  Capt. Robert Newell, DH and interim first line supervisor -
9      Capt. Newell will testify to the issues raised by Plaintiff
10     in her complaint as a percipient witness.
11 6.  Commander Mary Ellen Moss, JAG and management official -
12     Commander Moss will testify to the issues raised by
13     Plaintiff in her complaint as a percipient witness.
14 7.  James Wallace Burnham, Supervisory Contract Specialist, Co-
15     Worker - Mr. Burnham will testify to the issues raised by
16     Plaintiff in her complaint as a percipient witness.
17 8.  Omar Walton, IT Management specialist - Mr. Walton will
18     testify to the issues raised by Plaintiff in her complaint
19     as a percipient witness.
20 9.  Mr. Conforto - Mr. Conforto is Plaintiff's husband and can
21     testify as to damages.
22 10. Janet Vivian Walker, Human Resources Specialist - Ms. Walker
23     will testify to the issues raised by Plaintiff in her
24     complaint as a percipient witness.
25 11. Gloria Russell - Ms. Russell will testify to the issues
26     raised by Plaintiff in her complaint as a percipient
27     witness.  This witness will testify that she gave Plaintiff
28     "4"s and "5"s (out of 5 possible) on Plaintiff's evaluation,

2

1          only to have Capt. Newell lower these scores.

2    12.  Rear Admiral C. Forrest Faison III - Read Admiral Faison

3          will testify to the issues raised by Plaintiff in her

4          complaint as a percipient witness, including receiving

5          emails from Plaintiff's husband related to her employment

6          with the Agency.

7    13.  Antonita Perez, System Administrator- Ms. Perez will testify

8          to the issues raised by Plaintiff in her complaint as a

9          percipient witness.

10   14.  Margarita Diana Young, Human Resource specialist - Ms. Young

11        will testify to the issues raised by Plaintiff in her

12        complaint as a percipient witness.

13   15.  Dr. Summer-Scheleif, Medical Doctor, 760-806-4315, Vista, CA

14        - Dr. Summer-Scheleif will testify as to Plaintiff's medical

15        conditions and how the hostile work environment contributed

16        to Plaintiff's various medical problems.  This witness will

17        testify that Plaintiff was under her care and can testify as

18        to Plaintiff's mental state/condition.

19   16.  Dr. Jorge Carrera, Medical Doctor, 760-635-1777, Encinitas,

20        CA - Dr. Carrera will testify as to Plaintiff's medical

21        conditions and how the hostile work environment contributed

22        to Plaintiff's various medical problems.  This witness will

23        testify that Plaintiff was under his care and can testify as

24        to Plaintiff's mental state/condition.

25   17.  Kahmanian Omead, Chiropractor, 760-717-2744, Anchorage,

26        Alaska - Mr. Omead will testify as to Plaintiff's medical

27        conditions and how the hostile work environment contributed

28        to Plaintiff's various medical problems.  This witness will

1            testify that Plaintiff was under his care and can testify as

2            to Plaintiff's mental state/condition.

3      18.    Plaintiff reserves the right to call witnesses designated by

4            the Agency and witnesses in rebuttal.

5      B.    DOCUMENTS.

6      All documents, including sworn testimony, obtained during the

7      administrative process, copies of which are already in the

8      possession of Defendant. Plaintiff is not aware of further

9      exhibits at this time.

10     Plaintiff reserves the right to add exhibits at the time of the

11 hearing as well as to introduce exhibits for purposes of impeachment

12 or rebuttal.

13      C.    DAMAGES

14      Plaintiff has lost approximately $378,000 in lost wages. This

15 figure is based on Plaintiff earning approximately $126,000/year and

16 Plaintiff not working for the Agency from December 31, 2010 through

17 the present time. PLAINTIFF has also lost approximately $1,000 in

18 out of pocket medical expenses, $7,875 in sick leave time, and a

19 $3,000 bonus. Plaintiff also desires the notice of proposed seven

20 day suspension and reprimand removed from her official personnel

21 file, and reinstatement to an earned promotion level of GS-14.

22     The ongoing hostile work environment created by Captain John

23 Wayne LeFavour due to discrimination and harassment caused Plaintiff

24 anxiety, panic attacks, depression, stress, daily crying spells,

25 sleeplessness, increased appetite or decreased appetite causing

26 fluctuations in her weight, elevated blood pressure that included an

27 increase in her blood pressure medication, and general overall

28

4

1  deterioration of her health.  The treatment of Plaintiff at work by
2  Captain John Wayne LeFavour also caused her to see a psychiatrist,
3  at the behest of her general doctor due to the work-related stress,
4  and other doctors regularly due to her declining health caused
5  solely by Captain John Wayne LeFavour's actions.

6      On December 31, 2010, with all the increased harassment and
7  escalation of discrimination created by Captain John Wayne LeFavour
8  resulting in such a hostile work environment, Plaintiff was forced
9  to retire as her only option.  In addition, Plaintiff has incurred
10 legal expenses which are ongoing and will continue through
11 resolution of this matter, the amount of which will be determined at
12 the time of trial.

13     These disclosures are without prejudice to Plaintiff's right to
14 name further witnesses and offer additional evidence at the trial of
15 this matter.  Plaintiff has not started her discovery.

16

17                                   GRADY AND ASSOCIATES

18

19 Dated: January 17, 2014        By:
                                      SCOTT L. ZIELINSKI, ESQ.
20                                    Attorneys for Plaintiff
                                      MARIE CONFORTO
21

22

23

24

25

26

27

28

5

# EXHIBIT "B"

1  DENNIS M. GRADY, ESQ.  Bar No. 118461
   Email: gradyfedonly@msn.com
2  GARRETT A. SMEE, ESQ.  Bar No. 228055
   Email: gradyfedonly@msn.com
3  GRADY AND ASSOCIATES
   3517 Camino Del Rio South, Suite 400
4  San Diego, California  92108
   Telephone:  (619) 528-2530
5
   Attorneys for Plaintiff, MARIE CONFORTO
6

7

8                  UNITED STATES DISTRICT COURT

9                SOUTHERN DISTRICT OF CALIFORNIA

10

11 MARIE CONFORTO,               ) Case No. 12cv1316 W (BLM)
                                 )
12         Plaintiff,            ) **PLAINTIFF'S EXPERT WITNESS**
                                 ) **DISCLOSURES**
13 vs.                           )
                                 )
14 RAYMOND E. MABUS, SECRETARY,  ) Judge: Hon. Barbara Lynn Major
   DEPARTMENT OF THE NAVY,       )
15                               ) Trial Date: Not Set
           Defendants.          )
16                               )
                                 )
17 _____)

18      Plaintiff, MARIE CONFORTO ("RESPONDING PARTY" and/or

19 "PLAINTIFF"), pursuant to the disclosure of expert witness

20 information as required by the Case Management Conference Order

21 Regulating Discovery and Other Pretrial Proceedings, provides

22 the following list of retained and non-retained experts whose

23 opinions Plaintiff expects to offer in evidence at trial:

   **RETAINED**
24
        At the present time, Plaintiff does not intend to offer
25
   retained expert witness testimony.  However, pursuant to FRCP
26
   Rule 26, Plaintiff reserves the right to designate supplemental
27
   experts in response to Defendant's designations.
28

1    Moreover, Plaintiff has not completed discovery of the
2  facts relating to this case, has not fully completed discovery
3  in this action, and has not completed preparation for trial, and
4  therefore reserves the right to supplement this list at any time
5  given changed facts or circumstances.

6  **NON-RETAINED**

7    Plaintiff intends to call any of the following potential
8  percipient witnesses who may offer some expert opinions as
9  witnesses at the time of trial.  Pursuant to FRCP Rule
10  26(a)(2)(C), these potential witnesses, all of whom may offer
11  some non-retained expert testimony, are regarded as percipient
12  witnesses, not retained for the exclusive purposes of giving
13  expert testimony.

14    1.  Dr. Summer Scheleif, Medical Doctor, 380 South Melrose
15  Drive, Suite 315, Vista CA 92081; 760-806-4315 - Dr. Scheleif
16  will testify as to Plaintiff's medical conditions and how the
17  hostile work environment contributed to Plaintiff's various
18  medical problems.  This witness will testify that Plaintiff was
19  under her care and can testify as to Plaintiff's mental
20  state/condition.  As a non-retained expert, Plaintiff is unaware
21  of the rate for deposition and trial testimony for this witness.

22    2.  Dr. Jorge Carrera, Medical Doctor, 285 North El Camino
23  Real, Suite 205, Encinitas, CA 92024; 760-635-1777 - Dr. Carrera
24  will testify as to Plaintiff's medical conditions and how the
25  hostile work environment contributed to Plaintiff's various
26  medical problems.  This witness will testify that Plaintiff was
27  under his care and can testify as to Plaintiff's mental
28  state/condition.  As a non-retained expert, Plaintiff is unaware

2

09

1 | of the rate for deposition and trial testimony for this witness.

2 |     3.  Dr. Rahmanian Omead, Chiropractor, 9001 Jewel Lake

3 | Road, Suite 3, Anchorage AK 99502, (907) 245-7534 - Dr. Omead

4 | will testify as to Plaintiff's medical conditions and how the

5 | hostile work environment contributed to Plaintiff's various

6 | medical problems.  This witness will testify that Plaintiff was

7 | under his care and can testify as to Plaintiff's mental

8 | state/condition.  As a non-retained expert, Plaintiff is unaware

9 | of the rate for deposition and trial testimony for this witness.

10 |     Plaintiff reserves the right to call such additional

11 | experts as she deems appropriate in accordance with the

12 | provisions of Rule 26 of the Federal Rules of Civil Procedure.

13 |     In addition, Plaintiff reserves the right to call as an

14 | expert witness any other parties' expert witness, whose name and

15 | address will by that time be provided to counsel for the other

16 | parties.  Plaintiff reserves the right to add any additional

17 | experts as such need arises during the course of discovery and

18 | investigation in preparation for trial.

19 |     Finally, discovery in this case has not yet been completed.

20 | Depositions have not been taken or completed of certain parties,

21 | lay witnesses or experts.  Plaintiff therefore reserves the

22 | right to file a supplemental list of witnesses as discovery is

23 | completed and witnesses are identified.

24 |                        GRADY AND ASSOCIATES

25 |

26 | DATED: May 1, 2014        By:        _____

27 |                          Garrett A. Smee, Esq.
Attorneys for Plaintiff,
MARIE CONFORTO

28 |

# EXHIBIT "C"

**U.S. Departmen. .f Justice**

*Laura E. Duffy*
*United States Attorney*
*Southern District of California*

| *Laura Grimes* | *Tel: (619) 546-7748* |
| *Assistant United States Attorney* | *Fax: (619) 546-7751* |

<u>The Undersigned Is Located At:</u>
*San Diego County Office*
*Federal Office Building*
*880 Front Street, Room 6293*
*San Diego, California 92101-8893*

*Imperial County Office*
*516 Industry Way*
*Suite C*
*Imperial, California 92251-7501*

February 10, 2014

## VIA FIRST CLASS MAIL

Mr. Garrett Smee
Grady and Associates
3517 Camino Del Rio South, Suite 400
San Diego, CA 92108
Tel: (619) 528-2530

> *Re:* **Conforto v. Mabus, et al.**
> *Case No.: 12cv1316-W (BLM)*

Dear Mr. Smee:

Enclosed, please find three (3) releases for your client, Ms. Marie Conforto, to review, sign, date, and return. The first is an "Authorization to Release Medical Information," the second is an "Authorization to Release Medical/Psychiatric Information," and the third is an "Authorization to Release Payroll/Personnel Records." Each of these releases is required in order to obtain records from both medical providers and employers such as those mentioned in Plaintiff's Initial Disclosures. Please have the signed releases forwarded to our office at your earliest convenience.

If you should have any questions, please feel free to contact me at (619) 546-7540 or AUSA Grimes directly at (619) 546-7748. Thank you for your attention to this matter.

Sincerely,

LAURA E. DUFFY
United States Attorney

RYAN HARINGA
Paralegal Specialist to
LAURA GRIMES
Assistant U.S. Attorney

**COPY**

Enclosures

12

# EXHIBIT "D"

 Fax

3/20/2014

| | |
|---|---|
| From: | **Laura Grimes** |
| Phone: | **619-546-7748** |
| Company Name: | **United States Attorney's Office** |
| | |
| To: | **Garrett Smee, Esq.** |
| Phone: | **619-528-2580** |
| Fax: | **619-528-1580** |
| Company Name: | **Grady & Associates** |

**Comments: Conforto v. Mabus, 12cv1316 releases for med and psych info**

Garrett,

Per our discusson, I'm sending over several cases dealing with a plaintiff's right to privacy in a federal case (I know one deals with CA law in a diversity case).

Your client has put the records of the providers identified on her Initial Disclosures squarely at issue and has waived any right to privacy she may have had in their records of their treatment. We are entitled to the records from those providers, at a very minimum given the breadth of her claims for emotional and physical disrtress because of my client's alleged discrimination.

I look forward to speaking with you on Tuesday.

Thanks,

Laura

☐ Urgent    ☐ For Review    ☐ Please Comment    ☐ Please Reply    ☐ Please Recycle

# EXHIBIT "E"

ALAN A. ABRAMS, M.D., J.D., FCLM
6601 JACKSON DRIVE,
SAN DIEGO, CA 92119
619-460-0344 (voice and fax)
619-666-5570 (mobile)
alan.abramsmdjd@gmail.com
PHYSICIAN AND SURGEON'S LICENSE NO. G30135 (CA)
STATE BAR NO. 163639 (CA)

June 13, 2014

Dianne M. Schweiner, Esq.,
Assistant United States Attorney,
U.S.D.O.J.,
Federal Office Building,
880 Front Street, Room 6293,
San Diego, California 92101-8893

Re:   Conforto v. Mabus,
      Case No.: 12cv 1316-W (BLM)

Dear Ms. Schweiner:

At your request, I have reviewed the current files in the above captioned case, to address the
medical and mental health issues that have been raised, or that perhaps are significant in
understanding the allegations in the complaint. Ms. Conforto has alleged employment
discrimination based on age and gender, and also retaliation for EEO complaints. Ms. Conforto
at the time of her retirement in December 2010, was a Supervisory Contract Specialist, YC-1102-
02 at the Naval Medical Center. She was 57 years old (DOB August 6, 1953). Ms. Conforto is
requesting damages in her suit, inter alia, for "embarrassment, humiliation and mental anguish."
This report is being written to conform with the discovery deadlines. It is my understanding that
plaintiff is unwilling to agree to an IPE. Without an IPE, my opinions must be considered as
lacking the important direct clinical data that an IPE would provide. The psychological records
from Summer Schleif, Psy.D. are extremely superficial and cursory, and provide no meaningful
objective information regarding Ms. Conforto's mental status. Ms. Conforto's medical records
back to 2000, or earlier should be obtained to fully assess her long-standing or chronic medical
problems.

Thus, in reaching my current opinions, I have relied on the following documents which you have
provided to me: Plaintiff's Complaint filed 06/01/2012; Report of Investigation (ROI)
(approximately 750 pages); Email dated 05/24/2010 added to the ROI; Plaintiff's Official
Personnel File (OPF) (approximately 350 pages); Final Agency Decision (FAD) issued
10/28/2011 (approximately 30 pages); Medical Records Received from Plaintiff (approximately

16

Marie Conforto,
June 13, 2014
page 2 of 8

160 pages); Records of Dr. Kahmanian Omead (chiropractor) and Records of Summer Schleif,
Psy.D. (approximately 50 pages).

In brief summary, it appears that Ms. Conforto had a problem with self-referential
misperceptions of events around her, that was tinged with a persecutory belief ("paranoia").
Without an IPE, I cannot determine if this was due to a long-standing personality pattern, a more
acute paranoid disorder, a dementing process, or some other psychopathology. Ms. Conforto had
a number of medical problems during 2009 and 2010 that may have contributed to problems with
performance at work, and an abnormal sensitivity to criticism. Ms. Conforto's medical or
psychiatric conditions are not reflective of emotional damage due to prohibited employment
treatment. The lack of any realistic support for Ms. Conforto's allegations in the very detailed
Final Agency Decision (FAD) and investigation, suggests that her perception of mistreatment,
harassment, retaliation and discrimination is founded in a preexisting mental disorder or the
psychological effects of her chronic medical problems. The records of Summer Schleif, Psy.D.
lack the most basic mental health history, and provide no guidance in assessing Ms. Conforto's
possible preexisting psychopathology. There is no psychological testing or any objective
information in those records. Those records also do not support that Ms. Conforto has suffered
any mental damages caused by her employment treating her in a prohibited or discriminatory
manner. The records of Dr. Schleif only provide Ms. Conforto's subjective accounts.

Thus based on my review of the entirety of the file, it appears that Ms. Conforto has long-
standing psychopathology or else psychopathology that gave rise to her misperceptions of
mistreatment on her job. Further, it is possible that symptoms and complications of Ms.
Conforto's long standing hypothyroidism are fully responsible for her mental status and health
complaints. I see no evidence that any unlawful conditions at her employment caused any
psychopathology or emotional damages. Ms. Conforto may well have subjectively been unhappy
with her work situation, and may have experienced going to a job in which she felt under-
appreciated or held to performance standards as stressful. I have not considered subjective
unhappiness at work in the absence of prohibited or illegal behaviors by her employer as a basis
for emotional damages. The medical records indicate that Ms. Conforto had problems with her
weight and her blood pressure long before the alleged mistreatment. From the records of Dr.
Schleif, it appears that Ms. Conforto's subjective psychological symptoms only lasted for a brief
period. It appears that many of Ms. Conforto's health and stress complaints have continued to the
present time, which may indicate they are the result of factors other than her alleged illegal
treatment at her job.

## MS. CONFORTO'S ALLEGATIONS

Ms. Conforto has filed suit against the Secretary of the Navy alleging: Age Discrimination in
Employment; continuing Gender discrimination/harassment; continuing reprisal for prior EEO
activity; and continuing age discrimination/harassment. Ms. Conforto alleges she was forced to
constructively resign involuntarily.

Marie Conforto,
June 13, 2014
page 3 of 8

Ms. Conforto alleges, inter alia, that in December 2009, after filing for reconsideration of her performance rating, her parking space was taken away by her first line supervisor, Lt. Commander Michael Grande. Ms. Conforto alleges that she was properly guaranteed a promotion when her supervisor left as the Department Head of Material Management, and that a less qualified person was given the position. Ms. Conforto implies that this was retaliatory and or discriminatory on an illegal basis. Ms. Conforto alleges that she was denied training that was her due - Defense Acquisition Workforce Improvement act ("DAWIA") training. Ms. Conforto implies that this was retaliatory and or discriminatory on an illegal basis. Ms. Conforto alleges that on or about November 1, 2010, she received a "false Letter of Reprimand" (dated October 29, 2010) which she did not deserve. Ms. Conforto implies that this was escalating harassment, that was retaliatory and or discriminatory on an illegal basis. Ms. Conforto alleges that on December 14, 2010, she received a Notice of Proposed Seven Day Suspension based on "false reasons." Ms. Conforto implies that this was escalating harassment, that was retaliatory and or discriminatory on an illegal basis. Specifically related to my review of the records, Ms. Conforto alleges: "The ongoing hostile work environment created by Captain LeFavour due to discrimination and harassment caused PLAINTIFF anxiety, panic attacks, depression, stress, daily crying spells, sleeplessness, increased appetite or decreased appetite causing fluctuations in her weight, elevated blood pressure that included an increase in her blood pressure medication, and general overall deterioration of her health. The treatment of PLAINTIFF at work by Captain LeFavour also caused her to see a psychiatrist, at the behest of her general doctor due to the work-related stress, and other doctors regularly, due to her declining health caused solely by Captain LeFavour's actions." Ms. Conforto alleges that Captain LeFavour admitted his wrongdoing to her by extending condolences to her.

## REVIEW OF MEDICAL RECORDS

Many of Dr. Carrera's notes are poorly legible. Hopefully he will provide a guide to his notes prior to trial. When that is provided, I will be able to more fully review his comments in the progress notes.

Ms. Conforto had chronic problems with allergies and rhinitis. Progress note dated June 12, 2007, indicated that Ms. Conforto was under increased stress at work. No details are provided. She had occasional chest pain. Ms. Conforto weighed 205 lbs. Progress note dated July 11, 2008, indicated that Ms. Conforto was having low back and arm pain. Ms. Conforto weighed 225 lbs. On April 27, 2009, Ms. Conforto weighed 252 lbs. On July 22, 2009, Ms. Conforto weighed 263 lbs. She reportedly gained 11 lbs. This was felt to be a significant weight gain and laboratory studies were ordered. Progress note dated August 10, 2009, indicated that Ms. Conforto was doing well. Ms. Conforto weighed 260 lbs. Progress note dated September 16, 2009, indicated that Ms. Conforto was very busy due to work. Ms. Conforto weighed 259 lbs. Progress note dated March 9, 2010, indicates that Ms. Conforto was feeling that she was under increased stress at work. Ms. Conforto reported crying easily and having problems sleeping. Dr. Carrera prescribed Lexapro 10 mg (an SSRI psychotropic) and referred her to a psychiatrist [name illegible]. Ms. Conforto weighed 268 lbs. A progress note with an illegible date indicated that Ms. Conforto had taken the prescribed Lexapro for anxiety, but only took it for six days. Ms. Conforto weighed 268 lbs. A progress note dated April 12, 2010, indicated that Ms. Conforto

Marie Conforto,
June 13, 2014
page 4 of 8

had decided to retire in July 2010, and felt "much better" since her decision. She had been placed on metformin (for diabetes) by another doctor. Ms. Conforto weighed 268 lbs. On June 10, 2010, Ms. Conforto was seen after falling on her hands. It appears she fractured her left wrist. Ms. Conforto weighed 255 lbs. On July 2, 2010, Ms. Conforto weighed 256 lbs. She sprained her left knee. On November 2, 2010, Ms. Conforto complained of increased stress due to work. She was having sleep problems. Dr. Carrera referred her to a psychologist [presumably Dr. Schleif]. Ms. Conforto weighed 262 lbs. On November 29, 2010, Ms. Conforto weighed 267 lbs. A sleep study was scheduled. On February 7, 2011, Ms. Conforto weighed 267 lbs. On June 3, 2011, Ms. . Conforto weighed 268 lbs. On July 22, 2011, Ms. Conforto weighed 272 lbs. On January 16, 2012, Ms. Conforto weighed 278 lbs. On February 27, 2012, Ms. Conforto weighed 270 lbs. She was diagnosed with hypertension and hypothyroidism. On June 1, 2012, Ms. Conforto weighed 270 lbs. On December 17, 2012, Ms. Conforto weighed 273 lbs. She reported she was under increased stress. She was diagnosed with abdominal pain, diarrhea, and hypothyroidism. On January 18, 2013, Ms. Conforto weighed 276 lbs. She reported her anxiety was better, and her diarrhea resolved. She was diagnosed with hypertension and hypothyroidism. On April 24, 2013, Ms. Conforto weighed 277 lbs. She was diagnosed with anemia, GERD, hypertension and hypothyroidism.

Dr. Carrera had a GI consultation performed by Dr. Kumar on December 28, 2012. Ms. Conforto complained at that time of fatigue, weight gain, GI distress, nausea, and diarrhea. Ms. Conforto denied symptoms of anxiety/panic, depression, difficulty sleeping, inability to concentrate, loss of interest in enjoyable activities, or suicidal thoughts. No psychiatric symptoms were observed by Dr. Kumar.

On December 15, 2012, Ms. Conforto received a prescription for Nitazoxanide, an anti-protozoal agent to treat diarrhea caused by a parasite infection. The last progress note is dated April 2, 2013. In 2013, Ms. Conforto received medication refills for her antihypertensives and thyroid supplement.

Lab studies dated September 11, 2009, show impaired renal function. Lab studies dated March 30, 2010, show elevated glycerated hemoglobin and impaired renal function. Lab studies dated July 2, 2010, show elevated uric acid levels and sed rate. Lab studies dated December 1, 2011, show elevated TSH and abnormal impaired renal function. Lab studies dated December 28-29, 2012, show elevated lipids, mild anemia and abnormal impaired renal function. Lab studies dated April 22, 2013, show abnormal impaired renal function. No sleep study was found in the records reviewed.

Dr. Carrera wrote a number of "off work due to illness" prescriptions for Ms. Conforto. They are dated: March 9 to March 16, 2010; November 2, 2010, for 7 days; and November 5 to November 10, 2010.

During 2007, 2008, 2009 and 2010, Ms. Conforto received prescriptions for: steroid nasal spray; HCTZ (a diuretic antihypertensive); Benicar (an antihypertensive); and Levoxyl (thyroid supplement);

Marie Conforto,
June 13, 2014
page 5 of 8

### REVIEW OF PSYCHOLOGICAL RECORDS OF SUMMER SCHLEIF, PSY.D.

On a patient questionnaire [undated, likely November 8, 2010], Ms. Conforto subjectively reported problems with anger, sleep, irritability, dizziness, fatigue, high blood pressure, depression, chest pain, and anxiety. Ms. Conforto reported she wanted to deal with harassment at work. Ms. Conforto described herself as affectionate, outgoing, a leader, and friendly. Ms. Conforto reported she was missing work more often due to harassment. Ms. Conforto reported she was on her third marriage, and that she was married for two years.

In a letter to Dr. Carrera Dr. Schleif reported first treating Ms. Conforto on November 8, 2010.

In a TAR to Blue Cross [undated, likely December 2, 2010] Dr. Schleif describes Ms. Conforto as sad, depressed, worried and angry; that Ms. Conforto has poor concentration; that Ms. Conforto wakes up at least 3 times per night; that Ms. Conforto gained 80 lbs; and that Ms. Conforto had difficulty going to work wondering what they were going to pull next and loss of enjoyment due to harassment at work. Dr. Schleif reported a diagnosis of Adjustment Disorder with Mixed Anxiety and Depression (309.28). She reported a GAF of 60 (moderate symptoms). Dr. Schleif reported the first visit as December 2, 2010. She requested authorization for 15 sessions using CBT and mindfulness/meditation relaxation therapy.

Progress note dated November 8, 2010, reports Ms. Conforto saying that she feels work is causing all her problems. There is an extremely superficial mental status examination dated December 2, 2010. There is no biographical anamnesis. Progress note dated December 2, 2010, reports Ms. Conforto saying that she feels harassed and picked on. Ms. Conforto reported an 80 lb weight gain. Dr. Schleif described Ms. Conforto as having some cognitive problems "losing train of thought." Progress note dated December 9, 2010, reports Ms. Conforto saying that she was hurt, sad and anxious related to how work was treating her after so many great years. Ms. Conforto reported that she was being picked on at work. Progress note dated December 16, 2010, reports Ms. Conforto saying that she was going to retire as soon as possible because she cannot take the stress. Ms. Conforto reported nit picking write ups at work. Ms. Conforto reported she felt this was retaliation and that she was demoted last week. Progress note dated January 13, 2011, reports Ms. Conforto saying that she was sad it had to end this way after 38 years of work for the government. Ms. Conforto reported new harassment related to copying government files: "This situation is causing lots of stress." Progress note dated February 3, 2011, reports Ms. Conforto saying she feels pretty happy in past week but found giving testimony to EEO stressful. Progress note dated February 17, 2011, reports Ms. Conforto saying she feels pretty good. Dr. Schleif guided her through a meditation. Treatment was terminated.

There are no mentions of panic attacks in any of Dr. Schleif's records.

### REVIEW OF ADMINISTRATIVE RECORDS AND INVESTIGATIONS

On October 29, 2010, Ms. Conforto received a letter of reprimand for failing to follow instructions at work and unprofessional conduct. There is nothing insulting or offensive in the language of the letter.

Marie Conforto,
June 13, 2014
page 6 of 8

Ms. Conforto retired voluntarily on December 31, 2010, with a salary of $125,732.00.

Ms. Conforto initially made contact with an EEO officer on April 19, 2010. She filed the first of
five complaints on June 29, 2010. Her claims are reported as follows in the investigation: "Was
the Complainant discriminated against based on sex (female) and age (born August 6, 1953),
when she was subjected to unlawful discrimination constituting a hostile work environment
when:
1. In December 2009, after filing for a reconsideration of her annual performance rating her
parking spot was taken away by Lieutenant Commander (LCDR) Michael John Grande;
2. On March 4, 2010, when her former supervisor left she was not "fleeted up," as required by
her position description;
3. On April 15, 2010, LCDR Grande disapproved her Defense Acquisition Workforce
Improvement Act (DAWIA) training two days prior to her departure to the training;
4. On July 20 or 30, 2010, LCDR Grande expressed concern about her request to attend training
because of an upcoming Procurement Process Management Assessment Program (PPMAP), as a
result, she felt compelled to withdraw her request for training.
Amended Claims: Was the Complainant discriminated against based on sex, age, and
reprisal (prior EEO activity), when she was subjected to unlawful discrimination
constituting a hostile work environment when:
5. On October 6, 9, 15, and 19, 2010, Captain (CAPT) John Wayne LeFavour sent email
scrutinizing and accusing her of being "unprofessional" and "insubordinate;"
6. On November 1, 2010, she was issued a Letter of Reprimand (LOR), dated October 29, 2010,
for failure to follow work assignments and unprofessional conduct;
7. Her sick leave request for November 2, 2010, was denied by CAPT LeFavour;
8. CAPT LeFavour contacted the Human Resources Office (HRO) for information and/or
guidance to terminate her employment or suspend her for two weeks without pay;
9. On December 14, 2010, she was issued a Notice of Proposed Seven day Suspension for
"failure to accurately document travel orders and absence without leave (AWOL)," "failure to
follow a work assignment," and "unprofessional conduct;"
10. On December 31, 2010, she was forced to retire due to ongoing harassment;
11. January 7, 2011, she was issued a letter accusing her of copying materials improperly from
her work computer;
12. She received a negative interim National Security Personnel System (NSPS) appraisal in the
year 2010; she did not have a meeting with a management official to discuss her interim NSPS
appraisal for the year 2010; she did not receive her final NSPS appraisal for the year 2010; and
she did not receive a bonus or monetary raise for the year 2010.

Ms. Walker testified that Ms. Conforto mailed in her retirement documentation in April 2010
reflecting her intent to retire on July 3, 2010.

An investigation was conducted from October 30, 2010, to August 3, 2011. On November 1,
2011, no evidence of discrimination was found on investigation by the Naval Office of EEO. Ms.
Conforto's complaints appear to consist of multiple "slights" because she was not given special
treatment, and anger that she was subject to rules that others had to obey: "In her rebuttal

Marie Conforto,
June 13, 2014
page 7 of 8

statements, Complainant offered little more than her disagreements with management's articulated reasons and reiterations of her claims of discrimination, providing no substantive evidence in support of her allegations. She therefore did not show that management's actions were taken with the intent to discriminate against her, or that sex, age, and/or reprisal were motivating factors in any employment decisions."

## OPINION

Nothing in the extensive records of investigation support Ms. Conforto's allegations of illegal discrimination or retaliation. This obviously is the threshold question for whether there are emotional damages due to illegal discrimination or retaliation.

The medical records suggest that in 2009 and 2010, Ms. Conforto was suffering from a number of medical conditions which potentially could have caused her self perceived emotional problems. These include possible renal disease, sleep apnea, hypertension, hypothyroidism, obesity, anemia, rhinitis, and musculoskeletal problems.

In response to events at her work, Ms. Conforto developed a strong belief that she was being treated illegally, unfairly and was being victimized. There is insufficient information in the records to assess whether this "paranoia" reflected a long-standing personality pattern, a more acute paranoid disorder, a dementing process, or some other psychopathology. It does not appear to have any basis in reality as the investigation report documents. Ms. Conforto then expanded her paranoia to explain away all work correction, as not valid, but due to malice on the part of her supervisors. Ms. Conforto viewed discriminatory plots against her, to deprive her of parking spaces she felt entitled to, to promotions she felt entitled to, to raises she felt entitled to, and to being above correction after 38 years of service.

Ms. Conforto complained of stress at work in 2007. She had a relatively responsible position, which would presumably be accompanied by high levels of responsibility and "stress." Ms. Conforto may well have subjectively been unhappy with her work situation in 2009 and 2010, and may have experienced going to a job in which she felt under-appreciated or held to workforce performance standards as stressful. I have not considered her subjective distress and unhappiness at work in the absence of prohibited or illegal behaviors by her employer as a basis for emotional damages.

Dr. Schleif's records only document a brief period of symptoms due to an Adjustment Disorder from November 2010 to January 2011. Dr. Schleif's notes only record Ms. Conforto's subjective belief of illegal treatment, and do not demonstrate any questioning of Ms. Conforto's account, or attempt to obtain objective or collateral information. Dr. Schleif's records do not support that Ms. Conforto suffered any emotional damages due to illegal behaviors at work. Dr. Carrera's records similarly do not support that Ms. Conforto suffered any emotional damages due to illegal behaviors at work. It appears that many of Ms. Conforto's health and stress complaints have continued to the present time, which may indicate they are the result of factors other than her alleged illegal treatment at her job.

Marie Conforto,
June 13, 2014
page 8 of 8

I believe that based on the records there is no validity to Ms. Conforto's claims of emotional damage due to unlawful behaviors on the part of her supervisors at her workplace. An IPE would be necessary to provide fuller details that might not be contained in the records reviewed.

Please contact me if I can be of further assistance, particularly if additional discovery information becomes available, or if plaintiff agrees to an IPE. I will amend any oinions as indicated as additional information is received.

Again, thank you for asking me to participate in the evaluation of Ms. Conforto's claims.

Sincerely,

Alan A. Abrams, M.D., J.D.
Diplomate, American Board of Psychiatry and Neurology,
Subspecialty Certification in Forensic Psychiatry,
Subspecialty Certification in Addiction Psychiatry,



**UC San Diego**
HEALTH SYSTEM

I.    INTRODUCTION

I have been retained as an expert witness in this case on behalf of Defendant to provide expert testimony as to the clinical validity of claims by the Plaintiff.

II.    SUMMARY OF OPINIONS

From my review of the evidence, it is my opinion that the claims by the Plaintiff that her alleged harassment led to significant weight gain and other symptoms are grossly overstated. Based on my review of the records, I see no evidence of significant somatic or physical manifestations as a result of the alleged harassment.

It is my understanding that defense counsel was not able to retrieve all of the relevant medical records in this case and was limited to records provided only by Plaintiff herself, and her treating psychologist, Summer Schlief. Records subpoenaed from Jose Carrera, M.D. were apparently unavailable because Dr. Carrera reported he gave his original files to the Plaintiff and did not keep copies. Records subpoenaed from Plaintiff's chiropractor, Dr. Omead, were apparently unavailable because he lost them. As I have been unable to review the complete medical records relating to this Plaintiff, I reserve the right to supplement this report at a later date if those records become available.   .

III.    QUALIFICATIONS

I have served as a professor of general internal medicine at the University of California, San Diego (UCSD), since 1999. I have also served as the bariatrician for the UCSD Bariatric and Metabolic Institute since 2007. I also founded and serve as medical director of UCSD's Weight Management Program within the Bariatric and Metabolic Institute since 2010.

I received my Doctor of Medicine degree from the University of Washington in Seattle, WA, in 1996. During my education, I spent one year at the National Institutes of Health (NIH) in Bethesda, MD, as a Howard Hughes Medical Institute Scholar. I completed my internship and residency at UCSD from 1996-1999.

I practiced as a Hospitalist at UCSD from 1999-2001, and as a primary care general internist from 1999 to present. I have been board certified in internal medicine since 1999, with recertification in 2009. I have been practicing as a bariatrician since 2007, and became certified by the American Board of Obesity Medicine in 2012, the first year certification was offered.

I teach extensively at UCSD, to medical students, residents, and fellows. My teaching activities range from individual clinical instruction at the bedside, to basic lectures for first and second year medical students. I have lectured extensively at the medical school, clinical presentations to colleagues and peers, at regional conferences, and have been invited to lecture overseas in Argentina and Colombia.

**Internal Medicine**
8939 Villa La Jolla Dr, Suite Ste 110, Mail Code 0945   La Jolla, Ca 92037   Tel: (858) 657-8000   Fax: (858) 657-8558

24



# UC San Diego
## HEALTH SYSTEM

Although primarily a clinician and educator, I am also involved in some research projects. Recently I have co-authored several abstracts presented at conferences. I have written an invited review on the medical management of obesity, currently in press. I have also developed a learning module on the primary care management of obesity used for a clinical course at UCSD School of Medicine. I currently sit on the Board of Governors at UCSD Medical Group, School of Medicine Nutrition Curriculum Committee, and am currently in the process of developing a bariatric educational curriculum with residents and fellows.

I am a member of the American College of Physicians and The Obesity Society.

I have been voted on the "Top Doctor" list in San Diego Magazine, in partnership with the San Diego County Medical Society, every year from 2007-2013.

A copy of my curriculum vitae is attached to this report.

## IV.    PRIOR TESTIMONY

Beginning in December 2011, I was retained to serve as an expert witness in a matter before the Medical Board of California. The case was entitled: In Matter of the Accusation Against: Alwin Carl Lewis, M.D. I served as the expert witness for the Defendant. The case no is: 17-2008-193423.

## V.    COMPENSATION

My compensation in this matter is as follows:  $400/hr for review of medical records, written reports, independent medical examinations; $450/hr for deposition preparation and deposition; $1800/half day of expert witness testimony; and $3600/full day of expert witness testimony. My compensation is not dependent upon the outcome of this litigation.

## VI.    MATERIALS CONSIDERED AND REVIEWED

The opinions I express in this report are based upon my own knowledge and experience, and also on numerous documents I have reviewed and considered.  Specifically relevant to my opinions were all of the following documents:  Plaintiff's medical records including records from Plaintiff's primary care physician, endocrinologist and therapist; Plaintiff's complaint in this litigation; and the Report of Investigation relating to Plaintiff's EEO matter.

## VII.    EXPERT OPINION

As pertaining to the complaint by Plaintiff that discrimination and harassment caused anxiety, panic attacks, depression, stress, daily crying spells, and sleeplessness, these are all self-reported symptoms. Medical records from Plaintiff's treating psychologist, Summer Schleif, appear to reference only subjective complaints by Plaintiff, with no objective evidence, with the exception of very brief mention of noting "tearful" on 12/2/10 and "tearful and agitated" on 1/13/11. Specifically, initial note on 11/8/10 reflects Plaintiff states "My work situation is causing

**Internal Medicine**
8939 Villa La Jolla Dr, Suite Ste 110, Mail Code 0945   La Jolla, Ca 92037   Tel: (858) 657-8000   Fax: (858) 657-8558

25



## UC San Diego
### HEALTH SYSTEM

my symptoms". Visit on 12/2/10 notes chief complaint as "difficulty with emotions surfacing form feeling harassed and pushed out by work". Plaintiff also stated "Before this all happened at work I was a much happier person." Other self-reports included "tearful, losing train of thought several times, many intrusive thoughts, hurt, anger." Initial diagnosis by Summer Schlief was Adjustment Disorder with Depression and Anxiety. At that visit Plaintiff also states she has gained 80 lbs.

In a follow up visit on 12/9/10, Plaintiff states "I don't think I can work in this environment." Therapist's note indicates Plaintiff presented as "hurt/sad/anxious. . . emotions related to how her work is treating her after so many great years of working. . . "

On 12/16/10, Plaintiff states "I'm gonna retire as soon as possible, I just can't take this stress." Therapist observes Plaintiff to be "very stressed/sad re: work situation, nit picking write-ups, request for suspension all in past week. Discussed client's health - took blood pressure in session 153/83 - discussed benefits of DB and meditation."

Plaintiff cancelled visit with therapist on 1/6/11 because of death in the family.

Follow up visit on 1/13/11 reflects statement from Plaintiff, "I'm so sad that it had to end this way after 38 years of work for the government." Plaintiff noted to be "tearful and agitated" by therapist.

On 1/27/11, at a follow up visit, Plaintiff states "There is still a lot of stress but I'm looking forward to focusing on my health." Therapist notes "Client very motivated to lose weight/be healthy - discussed how she felt/why she gained 100 lbs, goals of how to lose . . ."

On 2/3/11, at a follow up visit, Plaintiff states "I have felt pretty happy in past week." Therapist notes "Client continues to work out, joined Weight Watchers, . . . Client talked about having to testify for EEO complaint being stressful/emotional."

On 2/17/11, at a follow up visit, Plaintiff states "I feel pretty good." Therapist notes progress and state ". . . As of now client terminated from services."

Based on my review of the therapist's records, it is my opinion that Plaintiff's complaints of depression, anxiety, insomnia, and stress appear to be related to the events relating to her work environment as she perceived them, whether true or not.

With regards to Plaintiff's complaint that stress from her alleged discrimination and harassment caused fluctuations in appetite and weight, I reviewed medical records from her primary care physician (PCP), Jorge Carrera, M.D., dating from 9/1/06 to 4/24/13. I also reviewed a consultation note from endocrinologist, Rahil A. Bandukwala, D.O., dated 3/26/10. In addition to reporting a weight gain of 80-100 lbs to her therapist, she noted to Dr. Bandukwala that she had gained 80 lbs over the course of the prior year. While it is true that Plaintiff gained approximately 80 lbs, it occurred over a period of three years preceding her initial allegation of discrimination in late 2009. Between the period of late 2009 until her date of retirement on 12/31/10, her weight

**Internal Medicine**
8939 Villa La Jolla Dr, Suite Ste 110, Mail Code 0945   La Jolla, Ca 92037   Tel: (858) 657-8000   Fax: (858) 657-8558

26



**UC San Diego**
HEALTH SYSTEM

fluctuated only by 10 lbs. In fact, the records indicate Plaintiff made attempts at weight loss that preceded her period of alleged harassment, specifically noted on clinic notes from Dr. Carrera from 4/15/08.

Based on my review of the available medical records, in 2006, at age 52, Plaintiff would have been characterized as Class 1 obesity with a Body Mass Index (BMI) of 32 kg/m$^2$. Based on her pattern of weight gain over the ensuing years, Plaintiff clearly demonstrates a propensity for significant weight gain. At the time Plaintiff filed for reconsideration of her performance rating in late 2009, her BMI was already approximately 43 kg/m$^2$, a classification of class 3 obesity. Her maximum BMI subsequently was approximately 45 kg/m$^2$, and only transiently. It is my opinion that the majority of her weight gain occurred prior to her alleged harassment, and the resultant stress did not contribute to a significant degree of weight gain, certainly not 80 lbs. Attached is a chart I have prepared demonstrating the relevant chronology of Plaintiff's weight gain.

With regards to Plaintiff's complaint that stress caused exacerbation of her hypertension, requiring an escalation of her blood pressure medications, I refer to a clinic note from Dr. Carrera, from sometime between 3/9/10 and 4/12/10 (exact date was not legible and this particular note appeared in chronological order between notes of stated dates). Dr. Carrera's clinic note indicates that Plaintiff's blood pressure was only mildly elevated at 140/90. During that visit, Dr. Carrera initiated amlodipine (norvasc), at a low dose of 2.5 mg daily. At Plaintiff's subsequent visit on 4/12/10, blood pressure was noted to be normal at 128/76. It is not clear from that note if Plaintiff had continued with the new blood pressure medication, amlodipine. Upon review of records of medication refills, amlodipine was not refilled at any other time, suggesting Plaintiff did not need this medication on an ongoing basis. It should be noted that Plaintiff had pre-existing hypertension since at least 2006, and was on blood pressure medications since at least 2007. It is my opinion that Plaintiff's hypertension was long-standing, secondary to her obesity, and that her reported stress did not contribute to major exacerbation of her condition.

This report is based upon review of considered materials, and may be amended in the future should additional materials be produced in this matter. I reserve the right to give opinions on facts and other matters arising subsequent to this report, including in rebuttal to any matter raised by plaintiff or her experts, either prior to or during any hearing or trial in this action.

06/13/2014

Eduardo Grunvald, M.D.

**Internal Medicine**
8939 Villa La Jolla Dr, Suite Ste 110, Mail Code 0945   La Jolla, Ca 92037   Tel: (858) 657-8000   Fax: (858) 657-8558

27

1  LAURA E. DUFFY
   United States Attorney
2  DIANNE M. SCHWEINER
   Assistant U.S. Attorney
3  Cal. State Bar No. 188013
   Office of the U.S. Attorney
4  880 Front Street, Room 6293
   San Diego, CA 92101-8893
5  Telephone: (619) 546-7654
   Facsimile: (619) 546-7751
6  Email: dianne.schweiner@usdoj.gov

7  Attorneys for Defendant Raymond E. Mabus
   Secretary of the Department of the Navy
8

9

10              UNITED STATES DISTRICT COURT

11            SOUTHERN DISTRICT OF CALIFORNIA

12

13
   MARIE CONFORTO,                    Case No.: 12cv1316-W (BLM)
14
                      Plaintiff,      PROOF OF SERVICE
15
          vs.
16

17 RAYMOND E. MABUS, SECRETARY,
   DEPARTMENT OF THE NAVY,
18
                      Defendant.
19

20

21
       IT IS HEREBY CERTIFIED that:
22
       I, the undersigned, am a citizen of the United States and am at least eighteen years
23
   of age.  My business address is 880 Front Street, Room 6293, San Diego, California
24
   92101-8893; I am not a party to the above-entitled action; and I caused service of the
25
   following documents:
26
   / / /
27
   / / /
28

                                    1

                                                        12cv1316-W (BLM)

                                                                              28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXPERT WITNESS DISCLOSURES,**
**REPORT AND CURRICULUM VITAE OF DR. ALAN ABRAMS; and**

**EXPERT WITNESS DISCLOSURES,**
**REPORT AND CURRICULUM VITAE OF DR. EDUARDO GRUNVALD.**

on the parties listed below by mailing by First Class Mail via the U.S. Postal Service said documents to the following counsel in this case:

> Dennis M. Grady, Esq.
> Garrett Smee, Esq.
> Grady & Associates
> 3517 Camino Del Rio South, Suite 400
> San Diego, CA 92108
> gradyfedonly@msn.com

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 13, 2014.

RYAN HARINGA

2



U.S. Department of Justice

*Laura E. Duffy*
*United States Attorney*
*Southern District of California*

| Dianne M. Schweiner | (619) 546-7654 |
| Assistant United States Attorney | Fax (619) 546-7751 |

*San Diego County Office*
*Federal Office Building*
*880 Front Street, Room 6293*
*San Diego, California 92101-8893*

*Imperial County Office*
*516 Industry Way, Suite C*
*Imperial, California 92251-7501*

June 14, 2014

Garrett Smee, Esq.
GRADY & ASSOCIATES
3517 Camino Del Rio South, Suite 400
San Diego, CA 92108

     Re:   <u>Conforto v. Mabus</u>
          Case No: 12cv1316-W (BLM)

Dear Mr. Smee:

     Pursuant to Rule 26(a)(2), enclosed are the expert witness disclosures for both Dr. Abrams (Exhibit A) and Dr. Grunvald (Exhibit B). Thank you for your attention to the above.

               Sincerely,

               LAURA E. DUFFY
               United States Attorney

               DIANNE SCHWEINER
               Assistant U.S. Attorney

Enclosures

**COPY**

# EXHIBIT "F"



U.S. Department of Justice

*Laura E. Duffy*
*United States Attorney*
*Southern District of California*

| *Dianne M. Schweiner* | *(619) 546-7654* |
| *Assistant United States Attorney* | *Fax (619) 546-7751* |

*San Diego County Office*
*Federal Office Building*
*880 Front Street, Room 6293*
*San Diego, California 92101-8893*

*Imperial County Office*
*516 Industry Way, Suite C*
*Imperial, California 92251-7501*

June 13, 2014

SENT VIA FACSIMILE AND U.S. MAIL
Fax No. (619) 528-1580

Garrett Smee, Esq.
GRADY & ASSOCIATES
3517 Camino Del Rio South, Suite 400
San Diego, CA 92108

      Re:    Conforto v. Mabus
             Case No: 12cv1316-W (BLM)

Dear Mr. Smee:

      This will memorialize our conversation of yesterday regarding my expert's request to conduct an Independent Psychiatric Examination of your client. As I explained, in light of the fact your client is seeking damages from the Navy for emotional distress, and in light of the fact you have designated her treating psychologist as an expert witness, I believe Dr. Abrams is entitled to conduct an examination of Ms. Conforto. I had also requested a brief extension of the expert report deadline so that Dr. Abrams could include any findings from his IPE in his report.

      In response to my request, you stated that you were not inclined to allow an IPE due to a situation that occurred between another lawyer in my office (Katie Parker), and another lawyer in your office (Ken Baisch), relating to a completely different lawsuit (Atkins v. Mabus, Case No. 12cv1390-GPC). Although you should be entirely aware of what occurred in the case between our colleagues due to the fact you were also actively involved in that litigation and are the attorney of record in Pacer, let me refresh your memory of the dispute that arose therein.

      Apparently Mr. Baisch of your firm blew the discovery deadline without having conducted any discovery, despite the fact discovery had been open for seven months. On the day Ms. Parker was set to file her Motion for Summary Judgment a month after discovery had closed, Ms. Baisch asked her to re-open the already expired discovery cut-off and allow him to take depositions for the first time. As Ms. Parker explained, she did not have the authority to change or extend the deadlines set by the Court, as only the Court can do so.

32

Garrett Smee, Esq.
June 13, 2014
Page Two

Mr. Baisch then waited another week before filing an ex parte motion to shorten time for a motion to allow discovery beyond the discovery cutoff. Judge Gallo denied that motion due to, among other things, the fact that Mr. Baisch was well aware of the discovery deadline and yet waited over a month after the deadline had passed to file a motion to extend it. Apparently your firm argued again to reopen discovery at the hearing on the motion for summary judgment held last week, which Judge Curiel likewise denied due to lack of good cause.

I fail to see how your firm's malpractice in the Atkins case, or Ms. Parker's inability to extend a Court-ordered discovery deadline for your colleague after that deadline had passed, has anything to do with Ms. Conforto's case, with me, or with my request that your client consent to an examination with Dr. Abrams. I fail to see how you can deny a reasonable request in this case based on something that occurred between other litigants in a completely unrelated case, and I believe your conduct is sanctionable.

You faxed a letter to me this morning denying my request to extend the expert witness report deadline, but ignoring my main request to schedule an IPE with your client. I assume from your silence on that topic that you are still denying my expert's request for an IPE. Therefore, I will be moving to compel an examination by Dr. Abrams since you have provided no relevant objection to his request to do so. Enclosed you will find a Notice of Independent Psychological Examination which notices your client's IPE for July 21, 2014 at 9:00 a.m.

Pursuant to Magistrate Judge Major's chamber rules, we are required to meet and confer **in person** before bringing a discovery dispute to her chambers. Therefore, please let me know which of the following dates are available for you to satisfy our in person meet and confer requirement: **Tuesday (6/17) any time, or Wednesday (6/18) any time after 2:00 p.m.** There is a chance I will be available late Monday afternoon but I have jury duty so will not know whether I am released in the afternoon until sometime on Monday.

I look forward to your prompt response advising when you are available to meet and confer, and whether you would prefer to hold our meeting in my offices or yours.

Sincerely,

LAURA E. DUFFY
United States Attorney

DIANNE SCHWEINER
Assistant U.S. Attorney

Enclosure

33

**EXHIBIT "G"**

# GRADY AND ASSOCIATES
ATTORNEYS AT LAW

DEL MAR HEIGHTS OFFICE
12707 HIGH BLUFF DR.
SUITE 200
SAN DIEGO, CA 92130
(858) 481-4956
FAX (619) 528-1580

3517 CAMINO DEL RIO SOUTH
SUITE 400
SAN DIEGO, CALIFORNIA 92108
(619) 528-2530
FAX (619) 528-1580

CARLSBAD OFFICE
701 PALOMAR AIRPORT RD.
SUITE 300
CARLSBAD, CA 92008
(760) 481-2010
FAX (619) 528-1580

June 13, 2014

**VIA FAX 619-546-7751**
**AND U.S. MAIL**
Dianne M. Schweiner
Assistant U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101-8893

     **Re: Marie Conforto v. Department of the Navy**
         **Our File No. 5290**

Dear Ms. Schweiner:

     I write to inform you that my client has denied the request you made yesterday for an extension to the expert reports that are due today.

                Sincerely,

                Garrett A. Smee, Esq.

GAS

35



# GRADY AND ASSOCIATES

DEL MAR HEIGHTS OFFICE
12707 HIGH BLUFF DR.
SUITE 200
SAN DIEGO, CA 92130
(858) 481-4936
FAX (619) 528-1580

3517 CAMINO DEL RIO SOUTH
SUITE 400
SAN DIEGO, CALIFORNIA 92108
(619) 528-2530
FAX (619) 528-1580

CARLSBAD OFFICE
701 PALOMAR AIRPORT RD.
SUITE 300
CARLSBAD, CA 92009
(760) 431-2010
FAX (619) 528-1580

## FACSIMILE TRANSMITTAL

Transmitting Fax Number
(619) 528-1580

DATE:        June 13, 2014

TO:          Dianne M. Schweiner
             Assistant U.S. Attorney

FAX NUMBER:   (619) 546-7751

ORIGINAL BY MAIL:   __X__ YES   ____ NO

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
FROM:     Garrett A. Smee, Esq.

RE:       **Marie Conforto v. Department of the Navy**
          **Case No. 12-CV-01316-W-BLM**
          **Our File No. 5290**

NO. OF PAGES, INCLUDING THIS PAGE   __2__

COMMENTS/INSTRUCTIONS:


The information contained in this transmission is attorney-client
privileged and confidential. It is intended only for the use of the
individual or entity named above. If the reader of this message is not the
intended recipient, you are hereby notified that any dissemination,
distribution or copy of this communication is strictly prohibited. If you
have received this communication in error, please notify us immediately by
telephone collect, and return the original message to us at the above
address via US mail. We will reimburse you for postage. Thank you.

36

# EXHIBIT "H"

1  LAURA E. DUFFY
   United States Attorney
2  DIANNE M. SCHWEINER
   Assistant U.S. Attorney
3  Cal. State Bar No. 188013
   Office of the U.S. Attorney
4  880 Front Street, Room 6293
   San Diego, CA 92101-8893
5  Telephone: (619) 546-7654
   Facsimile: (619) 546-7751
6  Email: dianne.schweiner@usdoj.gov

7  Attorneys for Defendant
   RAYMOND E. MABUS
8

9

10              UNITED STATES DISTRICT COURT

11             SOUTHERN DISTRICT OF CALIFORNIA

12

13
   MARIE CONFORTO,                    Case No.: 12cv1316-W (BLM)
14
                    Plaintiff,        NOTICE OF INDEPENDENT
15                                    PSYCHOLOGICAL EXAMINATION
          vs.
16
   RAYMOND E. MABUS, Secretary
17 Department of the Navy

18                   Defendant.

19

20

21       TO PLAINTIFF AND HER ATTORNEY OF RECORD:

22       Request is hereby made upon Plaintiff, MARIE CONFORTO, to submit to an

23 Independent Psychiatric Examination pursuant to Federal Rule of Civil Procedure 35.

24 The examination shall be performed by Alan Abrams, M.D., J.D., FCLM, a board

25 certified psychiatrist, and the location of the examination shall be 3551 Front Street, San

26 Diego, California 92103. The date and time for the examination shall be **Monday, July**

27 **21, 2014, commencing at 9:00 a.m.**, and continuing up to four hours of clinical

28

                              1

1  interview plus two hours for psychological testing (excluding breaks and lunch) as
2  reasonably required.

3      The scope of the examination will entail an assessment of the nature and extent of
4  Plaintiff's claimed emotional distress and/or psychological/psychiatric injuries, and
5  specifically including an oral interview, a comprehensive history of the Plaintiff's
6  psychological development, and psychological testing such as the Minnesota Multiphasic
7  Personality Inventory (MMPI). Dr. Abrams also reserves the right to administer any other
8  types of testing that Plaintiff's non-retained treating physicians or retained experts may
9  administer to the Plaintiff.

10

11  DATED:    June 13, 2014                   Respectfully submitted,
12
13                                          LAURA E. DUFFY
14                                          United States Attorney
15
16                                          DIANNE M. SCHWEINER
                                        Assistant United States Attorneys
                                        Attorneys for Defendant
                                        RAYMOND E. MABUS
17
18
19
20
21
22
23
24
25
26
27
28

2

1  LAURA E. DUFFY
   United States Attorney
2  DIANNE M. SCHWEINER
   Assistant U.S. Attorney
3  Cal. State Bar No. 188013
   Office of the U.S. Attorney
4  880 Front Street, Room 6293
   San Diego, CA 92101-8893
5  Telephone: (619) 546-7654
   Facsimile: (619) 546-7751
6  Email: dianne.schweiner@usdoj.gov

7  Attorneys for Defendant Raymond E. Mabus
   Secretary of the Department of the Navy
8

9

10              UNITED STATES DISTRICT COURT

11              SOUTHERN DISTRICT OF CALIFORNIA

12

13
   MARIE CONFORTO,                    Case No.: 12cv1316-W (BLM)
14
                        Plaintiff,    PROOF OF SERVICE
15
        vs.
16
17 RAYMOND E. MABUS, SECRETARY,
   DEPARTMENT OF THE NAVY,
18
                        Defendant.
19

20

21
        IT IS HEREBY CERTIFIED that:
22
        I, the undersigned, am a citizen of the United States and am at least eighteen years
23
   of age. My business address is 880 Front Street, Room 6293, San Diego, California
24
   92101-8893; I am not a party to the above-entitled action; and I caused service of the
25
   following documents:
26
   / / /
27
   / / /
28

                                    1

1      **NOTICE OF INDEPENDENT PSYCHOLOGICAL EXAMINATION,**
2      **PERFORMED BY DR. ALAN ABRAMS**

3  on the parties listed below by mailing by First Class Mail via the U.S. Postal Service said

4  documents to the following counsel in this case:

5

6                Dennis M. Grady, Esq.
                   Garrett Smee, Esq.
7                 Grady & Associates
        3517 Camino Del Rio South, Suite 400
8             San Diego, CA 92108
              gradyfedonly@msn.com

9

10    I declare under penalty of perjury that the foregoing is true and correct.

11    Executed on June 13, 2014.

12

13                           RYAN HARINGA

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2