1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   MARIE CONFORTO,                    )   Case No. 12cv1316-W (BLM)
                                        )
12              Plaintiffs,             )   **ORDER GRANTING DEFENDANT'S
                                        )   MOTION TO COMPEL THE
13   v.                                 )   VIDEOTAPED DEPOSITION OF THE
                                        )   PLAINTIFF AND THE PRODUCTION
14   RAYMOND E. MABUS AND DEPARTMENT )      OF DOCUMENTS AND GRANTING
     OF THE NAVY,                       )   DEFENDANT'S REQUEST FOR
15                                      )   SANCTIONS**
                Defendants.             )
16   _____ )   [ECF No. 29]

17          Currently before the Court is Defendant's July 30, 2014 motion to compel the

18   videotaped deposition of Plaintiff and the production of documents and Defendant's request

19   for sanctions [ECF No. 29 ("MTC")], Plaintiff's August 5, 2014 opposition to the motion [ECF

20   No. 30 ("Oppo.")], Plaintiff's August 6, 2014 addendum to opposition to motion to compel

21   videotaped deposition and production of documents at deposition [ECF No. 31

22   ("Addendum")], Defendant's August 7, 2014 Reply [ECF No. 32 ("Reply")], and Plaintiff's

23   August 8, 2014 Sur-Reply [ECF No. 33 ("Sur-Reply")].  For the reasons set forth below,

24   Defendant's motion is **GRANTED**.

25                          **PROCEDURAL BACKGROUND**

26          The above-entitled matter was initiated on June 1, 2012 when Plaintiff filed a

27   complaint for gender and age discrimination and retaliation.  ECF No. 1.  Defendant filed

28   a motion to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure

12CV1316-W(BLM)

("FRCP") 12(b)(1) and 12(b)(6) on October 19, 2012 [ECF No. 6] which was withdrawn on May 31, 2013.  ECF Nos. 12 and 13.  On November 26, 2013, Defendant answered the complaint [ECF No. 14] and the Court held an Early Neutral Evaluation Conference on December 20, 2013 [ECF No. 17].  After a January 27, 2014 telephonic Case Management Conference, the Court issued a Case Management Conference Order Regulating Discovery and Other Pretrial Proceedings.  ECF No. 20.

On June 19, 2014, the parties jointly contacted the Court regarding a discovery dispute brought by Defendant concerning Plaintiff's objections to Defendants' request for an Independent Psychiatric Evaluation ("IPE") of Plaintiff.  ECF No. 23.  After the call, the Court issued a briefing schedule [id.] and the parties filed their pleadings in accordance with that schedule.  See ECF No. 24-1, 25, and 26.  On July 10, 2014, the Court issued an Order granting Defendant's motion to compel the IPE of Plaintiff.  ECF No. 27.  In reaching its decision, the Court noted that Plaintiff already would be in San Diego, where the IPE was set to take place, for her deposition.  Id. at 6.

On July 25, 2014, Plaintiff and Mr. Smee arrived at the deposition and refused to proceed when they saw the videographer and recording equipment.  ECF No. 29-1, Declaration of Ms. Dianne Schweiner ("Schweiner Decl.") at 3.  Plaintiff and Mr. Smee argued that the deposition was improperly noticed and that Plaintiff was "not prepared for a videotaped deposition."  MTC at Exh. F at 10-11.  Ms. Schweiner contacted the Court regarding Plaintiff's objections to having her deposition videotaped.[1]  ECF No. 28.  The Court ordered the videotaped deposition to proceed forward and advised counsel that motions challenging the use of the videotape could be filed later.  MTC at Exh. F at 8-12.  Mr. Smee refused to proceed forward with the videotaped deposition.  The Court subsequently issued a briefing schedule [see ECF No. 28] and the parties filed their pleadings in accordance with that schedule.  See MTC, Oppo., Addendum, and Reply.

## DISCUSSION

Defendant asks that the Court order Plaintiff to attend her videotaped deposition,

---

[1]Plaintiff's counsel Mr. Garrett Smee was in the room at the time of the call.  Schweiner Decl. at 4. Plaintiff was asked to wait in the lobby while the call was taking place.  Id.

12CV1316-W(BLM)

which has been re-noticed for August 11, 2014, and "to produce all documents requested in Defendant's Notice of Deposition, including attorney's fees bills and tax returns."  MTC at 11; Exh. I.  Defendant further requests that the Court sanction Mr. Smee and/or Plaintiff for (1) the costs associated with the July 25, 2014 videotaped deposition ($200 to the videographer and $250 to the court reporter), (2) the attorney's fees incurred by defense counsel in preparing and filing the instant motion to compel ($1,128.30), and (3) payment to the Court's non-appropriated fund "in an effort to cease continuing discovery abuses in this case and others."  MTC at 10.

In support of the requests, Defendant argues that the deposition was properly noticed and that Mr. Smee - who was on notice about the videographer - failed to object to the presence of a videographer at the deposition, and therefore, waived any objections he may have had.  Id. at 7.  Defendant further argues that according to Federal Rule of Civil Procedure ("FRCP") 30(c), Mr. Smee should have stated his objection on the record and proceeded with the deposition.  Id.  Finally, Defendant argues that the 13 RFPs included in the original and amended deposition notices seek relevant documents that Plaintiff initially improperly refused to produce.  Id. at 8.  Defendant explains that Plaintiff has since agreed to produce all of the requested documents with the exception of "the attorney's fees bills . . . and Plaintiff's tax returns."  Id.  Defendant argues that federal authority mandates that Plaintiff produce the bills and tax returns since this is a Tile VII action where "Plaintiff is seeking reimbursement of attorneys fees from Defendant, and where the Plaintiff is seeking wage loss from the Defendant."  Id.

Plaintiff contends that "Defendant is overreaching" and asks that the request for a videotaped deposition of Plaintiff be denied.  Oppo. at 5; Addendum.  Plaintiff also requests that she be "awarded her attorney's fees [of $1,884] incurred in opposing this motion."  Oppo. at 5.  Plaintiff further requests that the Court deny Defendant's request for attorney billing statements, but that if it does not, the Court perform an *in camera* review of the billing statements prior to their disclosure.  Id. at 12-13.  In support, Plaintiff argues that (1) Defendant failed to participate in any further meet and confer efforts after the failed

12CV1316-W(BLM)

deposition attempt, (2) many of Plaintiff's attorney's billing statements are privileged, it would be overly burdensome to review the statements for privilege, and Defendant's request for the statements is overboard, (3) Plaintiff's tax returns are privileged, Plaintiff's husband has a right to privacy with respect to the tax returns, and there are less intrusive means of gathering the sought after information, and (4) the deposition was not property noticed as it only indicated that a videotaped deposition was possible, not that it was a certainty.  Oppo. at 8-17.

Plaintiff initially agreed to participate in the August 11, 2014 videotaped deposition and agreed that all requested documents, with the exception of the attorney billing statements and tax returns, would be produced.  Id. at 7-8.  Plaintiff argues that since Defendant failed to ask her to pay for the videographer and court reporter prior to filing his motion, the motion should be denied and in the event that Defendant's motion is granted, Plaintiff should be ordered only to pay $450.00 for the court reporter and videographer bills as any "[s]anctions stemming from refusal to produce tax returns and billing entries would amount to an abuse of discretion."  Id. at 18-19.

On August 6, 2014, Plaintiff changed her position on the August 11, 2014 deposition and in the addendum, Plaintiff states that she "is no longer inclined to voluntarily participate in a videotaped deposition" because she received notice on August 5, 2014, that her doctor believes "that a videotaped deposition is not medically advisable and may have an adverse impact on Plaintiff's health."  Addendum at 1.  Plaintiff requests that the Court grant Plaintiff a protective order and deny Defendant's motion to compel the videotaped deposition of Plaintiff "in order to avoid annoyance . . . oppression . . . undue burden. . . [and] expense."  Id. at 2.

In his reply, Defendant states that defense expert Dr. Alan Abrams, who recently examined Plaintiff, is of the opinion that "there are no medical reasons that [Plaintiff] cannot participate in a videotaped deposition, other than her subjective discomfort."  Reply at 7.  Defendant further states that he is willing to do without Plaintiff's tax returns as long as Plaintiff produces her W-2s.  Id. at 9.  Defendant notes that Plaintiff previously refused

1    to produce the W-2s that she now suggests would be more appropriate than her tax

2    returns.  Id.

3    **A.      Motion to Compel Videotaped Deposition**

4           Plaintiff argues that Ms. Schweiner "falsely stated to Judge Major's law clerk that she

5    had 'properly noticed' the videotaped deposition," and that the notice was not proper

6    because it said that the "deposition <u>may</u> also be recorded by videotape" and not that it

7    would be videotaped.  Oppo. at 8, 16; <u>see</u> <u>also</u> MTC at Exh. C.  Plaintiff further argues that

8    the deposition notice was intentionally misleading because Ms. Schweiner knew that the

9    deposition would be recorded since she stated that she always videotapes her depositions.

10   Oppo. at 8.  Finally, Plaintiff now requests that the Court enter a protective order so that

11   she does not have to participate in the videotaped deposition based on her doctor's

12   recommendations.  Addendum at 2.

13          1.      <u>Legal Standard</u>

14          FRCP 30(a)(1) provides that "[a] party may, by oral questions, depose any person,

15   including a party, without leave of court...."  "A party who wants to depose a person by oral

16   questions must give reasonable written notice to every other party.  The notice must state

17   the time and place of the deposition and, if known, the deponent's name and address."

18   FRCP 30(b)(1).  The notice must also state "the method for recording the testimony" and

19   the "testimony may be recorded by audio, audiovisual, or stenographic means."  FRCP

20   30(b)(3).  Any objections during the deposition "whether to evidence, to a party's conduct,

21   to the officer's qualifications, to the manner of taking the deposition, or to any other aspect

22   of the deposition--must be noted on the record, but the examination still proceeds; the

23   testimony is taken subject to any objection."  FRCP 30(c)(2).  Objections must be stated

24   concisely in a nonargumentative and nonsuggestive manner and a deponent may only be

25   instructed not to answer "when necessary to preserve a privilege, to enforce a limitation

26   ordered by the court, or to present a motion under Rule 30(d)(3)."  Id.

27          Upon a showing of good cause, the Court may "issue an order to protect a party or

28   person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed.

R. Civ. P. 26(c)(1).  "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1210–11 (9th Cir. 2002), citing Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test"); see also Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975) (Under liberal discovery principles of the federal rules, those opposing discovery are required to carry a heavy burden of showing why discovery should be denied).  The court has wide discretion to determine what constitutes a showing of good cause and to fashion a protective order that provides the appropriate degree of protection. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).

> 2.    Analysis

Defendant noticed Plaintiff's deposition for July 22, 2014.  MTC at Exh. A.  After receiving a request from Plaintiff's counsel to move the deposition, Defendant agreed and served an amended notice of deposition on July 9, 2014.  Id. at Exh. B and Exh. C; see also Schweiner Decl. at 2.  The amended notice provided that the deposition would take place on July 25, 2014 at 9:00 a.m. at the United States Attorney's Office, Civil Division.  Id.  The notice further provided that the deposition would be taken before a certified shorthand reporter and notary public and may be videotaped.  MTC at Exh. C.  Plaintiff did not object to the notice or to the pending deposition.  Id. at 7.

On July 25, 2014, Plaintiff and Mr. Smee arrived at the deposition, observed the video equipment in the deposition room, and advised Ms. Schweiner that the deposition would not go forward if it was going to be videotaped.  Schweiner Decl. at 3.  Plaintiff and Mr. Smee objected to the videotaping of the deposition on the grounds that the deposition notice was improper and that Plaintiff was "not prepared for a videotaped deposition

today."[2]  MTC at Exh. F at 10-11.  Ms. Schweiner then contacted Judge Major's chambers by telephone with Mr. Smee in the room.  Schweiner Decl. at 4.  After learning that Judge Major was out of the district and unavailable, Ms. Schweiner proceeded to state her position on the record which involved asking Mr. Smee to have Plaintiff participate in the deposition and make any objections that he had at a later date.  Id.  Mr. Smee refused and the parties again spoke with Judge Major's law clerk who informed the parties on the record, that she had spoken with Judge Major and that Judge Major's instructions were for the parties to proceed with the videotaped deposition and that Mr. Smee could file a motion challenging the videotape at a later date.  Id.; see also MTC at Exh. F at 8.  Mr. Smee objected, arguing that he was unable to present his position to Judge Major and that he "was not inclined to follow the verbal instruction of the law clerk."  MTC at Exh. F at 9.  He again alleged that he received "improper notice" for a videotaped deposition and that while he did not have any federal law in support of his position,  "the last time [he] looked at this issue under state law, to do a videotaped deposition it has to be done with a notice that says it will be done by a videotape depo."  Id. at Exh. F at 10.   Finally, Mr. Smee argued that the deposition was "an unfair surprise"[3] and that if the judge was ordering the deposition to take place "it would be a grossly improper order."  Id. at Exh. F at 11.  Before Mr. Smee and Plaintiff walked out of the deposition, Ms. Schweiner reminded Mr. Smee that her office would be responsible for the cost of the deposition and that state law regarding depositions did not apply to the instant federal action.  Id. at Exh. F at 11-12.  Mr. Smee and Plaintiff still chose to leave rather than proceed with the videotaped deposition.  Id.

As an initial matter, Plaintiff has provided the Court with absolutely no authority for

---

[2]Plaintiff made this objection even though she and her counsel spent more than four hours preparing for the deposition and despite admitting that she knew there was a possibility that the deposition would be videotaped.  ECF No. 30-1, Declaration of Ms. Marie Conforto ("Plaintiff's Decl.") at 3-4 (stating that Mr. Smee told Plaintiff on July 25, 2014, prior to arriving at the deposition, that he had not yet been advised as to whether or not the deposition would be videotaped and that she discussed the possibility of a videotaped deposition with her husband that morning prior to arriving at the deposition).

[3]See Plaintiff's Decl. at 3-4 (Plaintiff and her counsel were aware that a videotaped deposition was a possibility on the morning of the deposition).

the proposition that a deposition notice which uses the word "may" is insufficient and that the notice must state that the deposition will be videotaped. Rule 30(b)(3)(A) requires that "[t]he party who notices the deposition must state in the notice the method for recording the testimony." The party noticing the deposition also may designate an additional method of recording the testimony so long as the parties and the deponent are provided prior notice. See Rule 30(b)(3)(B). In this case, Plaintiff and Mr. Smee were clearly put on notice that the deposition "may also be recorded by videotape" in addition to being taken before a "certified shorthand reporter and notary for the State of California." MTC at Exh. C. Plaintiff admits that she knew videotaping was a possibility. Plaintiff's Decl. at 3-4. If this factor was important to Plaintiff, Mr. Smee could have called Ms. Schweiner prior to the deposition to verify whether it was going to be videotaped. Mr. Smee chose not to do so. Plaintiff also had ample time prior to the deposition to object to the form of the notice and/or the possibility of videotaping and failed to do so. Moreover, FRCP 30(c)(2) provides that counsel should state on the record any objections to the deposition to preserve them and then proceed forward with the deposition. Plaintiff failed to comply with this requirement. Finally, the Court through its law clerk ordered counsel to preserve objections and proceed forward with the videotaped deposition. Counsel and Plaintiff refused to comply with this Court's order. For all of these reasons, Plaintiff's refusal to proceed forward with the properly noticed videotaped deposition was without merit.

Plaintiff now argues that she is medically unable to proceed with her videotaped deposition. See Addendum at 1. Although it is not entirely clear, it appears that Plaintiff is willing to be deposed and does not believe that the deposition process creates any medical concerns, rather the asserted concern is that the videotaping process will somehow affect Plaintiff's health. Id. Initially, the Court notes that Plaintiff did not raise this health concern during the original dispute on July 25, 2014 and, in fact, agreed in her opposition filed on August 5, 2014, that she would participate in a videotaped deposition on August 11, 2014. Oppo. at 7. Just one day later, on August 6, 2014, Plaintiff states that she is no longer willing to voluntarily go forward with the videotaped deposition. Addendum at 1. Plaintiff alleges that her change of heart is due to her doctor's opinion (received on August

5, 2014 after 5:00 p.m.) that a videotaped deposition "is not medically advisable."[4]  Id.  The

medical opinion that Plaintiff is referring to is from Dr. Isaac L. Elam of St. Luke's Clinic and

states in its entirety:

> Ms. Conforto has a history of anxiety; by her history this appears to be
> related to her former employment situation, and has been treated
> successfully in the past.  With current legal proceedings, further stress has
> been placed on her, made worse by the unexpected development of being
> asked to be video recorded.  After this situation and increased stress, she had
> symptoms consistent with a panic attack.   She also had other signs of
> increased anxiety with a persistently elevated blood pressure that was
> previously under great control.  Given the strong psychological response she
> had to this situation, it is in the best interest of her physical and mental
> health to avoid unnecessary stress such as video recordings.  Please consider
> this in further proceedings.

Oppo. at Exh. 5.

The Court finds that Dr. Elam's letter provides minimal value to the instant dispute.

Initially, Dr. Elam does not state that he examined, treated, or even met with Plaintiff after

the July 25th failed deposition and prior to writing his letter.  Secondly, Dr. Elam does not

provide any medical basis for his assertion that video recordings create unnecessary stress.

Id. ("it is in the best interest of her physical and mental health to avoid unnecessary stress

such as video recordings").   Dr. Elam also does not provide any medical basis for his

assumption that the potential for video recording caused the stated symptoms and alleged

increased stress, rather than the litigation itself, the need to participate in any type of

deposition (even if not videotaped), or any of the other medical and emotional issues

present in Plaintiff's life.  Rather, it appears that Dr. Elam is relying upon Plaintiff's (or

Plaintiff's counsel's) statement that the possibility of videotaping caused the increased

stress and anxiety.  Finally, the Court notes that Dr. Elam's conclusion is contradicted by

the opinion of Defendant's expert, Dr. Alan Abrams, who examined Plaintiff on July 23rd

and found that "there are no medical reasons that [Plaintiff] cannot participate in a

---

[4]Plaintiff was not only aware of this opinion when she filed her opposition agreeing to the August 11, 2014 videotaped deposition, she included it as an exhibit to her opposition.  Oppo. at Exh. 5.  Plaintiff provides no explanation as to why she felt medically able to participate in the deposition when she filed her opposition on August 5, 2014, but not on August 6, 2014 when she filed her addendum.

12CV1316-W(BLM)

videotaped deposition, other than her subjective discomfort."  Reply at 7, ECF No. 32-2, Declaration of Dr. Alan Abrams at 2-3.

Plaintiff also submits a personal declaration in support of her argument that the deposition should not be videotaped.  See Plaintiff's Decl. at 3-4.  In her declaration, Plaintiff admits that she knew prior to the July 25th deposition that the deposition might be videotaped.  Id.  Plaintiff states that she had difficulty the day after the deposition on her flight home from San Diego because she felt "light headed and dizzy" and "began to see white spots or starts and white lines."  Id. at 5-6.  The relevance of this statement is unclear.  Plaintiff describes herself as having  the beginning stages of diabetes, high blood pressure, kidney disease and sleep apnea.  Id. at 1.  Plaintiff does not claim that the difficulties she experienced on the plane were due to her concerns about the videotaping, rather than her concerns about a deposition of any type or any other emotional or physical issues.  In addition, given the additional health issues identified by Plaintiff, the symptoms could have been caused by any number of physical or emotional issues.  As such, the Court finds that Plaintiff's declaration does not provide any basis to prevent the August 11th deposition from being videotaped.

For the reasons set forth above, Defendant's motion to compel the videotaped deposition is **GRANTED**.  Plaintiff's videotaped deposition will take place on **August 11, 2014** at **9:00 a.m.** in the United States Attorney's Office, Civil Division as noticed.  See MTC at Exh. I.

**B.**     **Motion to Compel Attorney Billing Statements and Tax Returns**

RFP No. 7 requests:

> All documents relating to time expended by your attorneys for which you seek to recover fees in this action.  (To prevent delays due to misinterpretation of the law, you are specifically advised that pursuant to Clarke v. American Commerce National Bank, 974 F. 2d 127, 129 (9th Cir. 1992), the identity of the client, the amount of the fee, the identification of payment by case file name and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege).

MTC at Exh. C.  Defendant argues that these records are required to be produced where,

as here, "Plaintiff is seeking reimbursement of attorney's fees from Defendant."  MTC at 8.
Plaintiff objects that the request is irrelevant and privileged.  Oppo. at 12-13. Plaintiff
requests that "[i]f the Court here is inclined to determine that these four years of billing
entries should be produced, [Plaintiff] respectfully requests an *in camera* review to help
protect against disclosure of attorney-client material, and attorney work-product material."
Id. at 13.  Both parties cite to <u>Clarke</u>, 974 F. 2d at 129, in support of their positions.  MTC
at Exh. C; Oppo. at 12.

RFP No. 12 requests:

> Your state and federal tax returns (including, but not limited to W-2 forms,
> schedules, and other attachments) for each year from 2006 through the
> present.  (Please note that any objection to the production of tax returns in
> this action is invalid as tax returns are not privileged under federal law, and
> Plaintiff has placed her income at issue due to the fact that you are suing the
> Agency for lost wages and benefits.  <u>See Heathman v. United States District
> Court</u>, 503 F. 2d 1032 (9th Cir. 1974); <u>Young v. United States</u>, 149 F.R.D. 199
> (S.D. Cal. 1993).

MTC at Exh. C.  Defendant argues that "the relevant federal authority mandat[es] that
these documents be produced in a Title VII action . . . . where the Plaintiff is seeking wage
loss from the Defendant."  MTC at 8 (emphasis omitted).  Plaintiff argues that federal tax
returns are privileged and that requiring Plaintiff to produce her tax returns would violate
the privacy of a third party, Plaintiff's husband, who files joint tax returns with Plaintiff.
Oppo. at 14-16; ECF No 30-2, Declaration of Dennis Conforto.  Finally, Plaintiff asserts that
there are less restrictive ways for Defendant to obtain the information such as W-2's and
paystubs.  Oppo. at 16.  Defendant cites <u>Heathman</u>, 503 F. 2d 1032 (9th Cir. 1974) and
<u>Young</u>,149 F.R.D. 199 (S.D. Cal. 1993) in support of his position.  Plaintiff primarily relies
on <u>Premium Serv. Corp. V. Sperry & Hutchinson Co.</u>, 511 F. 2d 225, 229 (9th Cir. 1975).

1.    <u>Legal Standard</u>

The Federal Rules of Civil Procedure ("FRCP") generally allow for broad discovery,
authorizing parties to obtain discovery regarding "any nonprivileged matter that is relevant
to any party's claim or defense . . . ."  FRCP 26(b)(1).  Also, "[f]or good cause, the court

may order discovery of any matter relevant to the subject matter involved in the action."
Id.   Relevant information for discovery purposes includes any information "reasonably
calculated to lead to the discovery of admissible evidence," and need not be admissible at
trial to be discoverable.   Id.   There is also no requirement that the information sought
directly relate to a particular issue in the case; rather, relevance "encompass[es] any matter
that bears on, or that reasonably could lead to other matter that could bear on, any issue
that is or may be in the case."   Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 354
(1978) (citation omitted).   District courts have broad discretion to determine relevancy for
discovery purposes.   See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002).   District
courts also have broad discretion to limit discovery to prevent its abuse.   See FRCP 26(b)(2)
(instructing that courts may limit discovery where it is "unreasonably cumulative or
duplicative," "obtain[able] from some other source that is more convenient, less
burdensome, or less expensive," or where its burden or expense "outweighs its likely
benefit").   A party seeking to compel discovery carries the burden of demonstrating that
its request meets the relevancy requirements of FRCP 26(b)(1).   Kane v. Pierce, 2010 WL
503048, *1 (E.D. Cal. Feb. 5, 2010).   "The party who resists discovery has the burden to
show that discovery should not be allowed, and has the burden of clarifying, explaining,
and supporting its objections."   DirectTV, Inc. v. Trone, 209 F.R.D. 455, 458 (C.D. Cal.
2002).

A party may request the production of any document within the scope of Rule 26(b).
FRCP 34(a).   "For each item or category, the response must either state that inspection and
related activities will be permitted as requested or state an objection to the request,
including the reasons."   FRCP 34(b)(2)(B).   The responding party is responsible for all items
in "the responding party's possession, custody, or control."   FRCP 34(a)(1).   However,
actual possession, custody or control is not required; rather, "[a] party may be ordered to
produce a document in the possession of a non-party entity if that party has a legal right
to obtain the document or has control over the entity who is in possession of the
document."   Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

1   "If a subpoena duces tecum is to be served on the deponent, the materials
2   designated for production, as set out in the subpoena, must be listed in the notice or in an
3   attachment.  The notice to a party deponent may be accompanied by a request under Rule
4   34 to produce documents and tangible things at the deposition."  FRCP 30(b)(2).

5   2.   <u>Analysis</u>

6        Defendant's motion to compel documents in response to RFP No. 7 is **GRANTED**.
7   The Court finds that the requested information is relevant to the damages sought by
8   Plaintiff in this case since she is requesting payment for the costs of suit, including
9   attorney's fees.  ECF No. 1 at 10.  Federal common law governs issues concerning the
10  attorney-client privilege when the parties are litigating a federal question.  <u>Clarke</u>, 974 F.
11  2d at 129.  The Ninth Circuit has recognized that "[n]ot all communications between
12  attorney and client are privileged."  <u>Id.</u>  Specifically, "the identity of the client, the amount
13  of the fee, the identification of payment by case file name, and the general purpose of the
14  work performed are usually not protected from disclosure by the attorney-client privilege."
15  <u>Id.</u> (citing <u>Tornay v. United States</u>, 840 F.2d, 1424 1426 (9th Cir. 1988); <u>In re Grand Jury</u>
16  <u>Witness (Salas and Waxman)</u>, 695 F.2d 359, 361–62 (9th Cir.1982); <u>Hodge and Zweig</u>, 548
17  F.2d at 1353; <u>United States v. Cromer,</u> 483 F.2d 99, 101–02 (9th Cir.1973)).  "However,
18  correspondence, bills, ledgers, statements, and time records which also reveal the motive
19  of the client in seeking representation, litigation strategy, or the specific nature of the
20  services provided, such as researching particular areas of law, fall within the privilege."  <u>Id.</u>
21  (citing <u>Salas,</u> 695 F.2d at 362).  The burden is on the party asserting the privilege to
22  establish that the attorney-client privilege applies to the requested documents.  <u>Id.</u> (citing
23  <u>Tornay</u>, 840 F.2d, at 1426).

24       Here, Defendant's request for "[a]ll documents relating to time spent by your
25  attorneys for which you seek to recover fees in this action" is proper in that it seeks
26  documents supporting one aspect of Plaintiff's damages.  If the requested billing records
27  contain privileged information as Plaintiff contends, Plaintiff should redact the privileged
28  information and produce the redacted documents and a privilege log.  FRCP 26(b)(5).  In

1   deciding which information to redact, Plaintiff should consult the relevant legal authority
2   including Clarke, 974 F. 2d at 129.

3        The Court **DENIES** Plaintiff's request for an *in camera* review of the responsive
4   documents.   Plaintiff bears the initial burden of reviewing for privilege and producing
5   responsive, nonprivileged information.   If the parties disagree on the extent of redacted
6   information or the privilege claimed, the parties may contact the Court to file a new motion.
7   Plaintiff is **ORDERED** to provide the responsive, non-privileged (redacted) documents to
8   Defendant at her deposition on **August 11, 2014**.

9        Defendant's motion to compel documents in response to RFP No. 12 is **GRANTED.**
10  The Court finds that the requested information is relevant in a case where Plaintiff is
11  seeking lost wages.   Defendant has agreed to accept Plaintiff's W-2 forms in lieu of her tax
12  returns "to avoid any privilege issues associated with the production of [Plaintiff's] tax
13  returns."   Reply at 9.   Plaintiff herself suggests that the production of W-2s and paystubs
14  is appropriate and less restrictive than tax returns.   Oppo. at 16.   Accordingly, Plaintiff is
15  **ORDERED** to produce her W-2s from 2006 to the present to Defendant at her deposition
16  on **August 11, 2014**.

17  **C.**   **Sanctions**

18  1.   Legal Standard

19        If a motion to compel discovery is granted, Rule 37(a)(5) *requires* a court to order
20  the "party or deponent whose conduct necessitated the motion, or the party or attorney
21  advising that conduct, or both to pay the movant's reasonable expenses incurred in making
22  the motion, including attorney's fees" unless the movant failed to meet and confer, the
23  objection was substantially justified, or other circumstances militate against awarding
24  expenses.  (emphasis added).  See Brown v. Hain Celestial Group, Inc., 2013 WL 5800566,
25  *5 (N.D. Cal. Oct. 28, 2013) ("[t]he party that loses the motion to compel bears the
26  affirmative burden of demonstrating that its position was substantially justified") (internal
27  citations omitted).

28        Rule 30(d)(2) provides that a court "may impose an appropriate sanction - including

the reasonable expenses and attorney's fees incurred by any party - on a person who impedes, delays, or frustrates the fair examination of the deponent." <u>Bicek v. C & S Wholesale Grocers, Inc.</u>, 2013 WL 5673418, *6-8 (E.D. Cal. Oct. 17, 2013) (finding sanctions appropriate under both Rules 30 and 37 as a result of counsel's delaying, impeding and frustrating depositions, and for causing opposing counsel to seek the court's intervention to resolve the dispute); <u>Rawcar Group, LLC v. Grace Medical, Inc., et al.</u>, Case No. 13cv1105-H(BLM) (S.D. Cal. August 4, 2014) (United States District Judge upholding magistrate judge's order granting plaintiff's motion to compel videotaped deposition where defense counsel failed to object to the deposition and arrived at the deposition and refused to participate alleging that the deposition notice was improper and the defendant was not prepared for a videotaped deposition and awarding $19,286.70 in sanctions).

Similarly, Civil Local Rule 83.1(a-b) provides that

> a. Failure of counsel or of any party to comply with these rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the court may be ground for imposition by the court of any and all sanctions authorized by statute or rule or within the inherent power of the court, including, without limitation, dismissal of any actions, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions.

> b. For violations of these Local Rules or of a specific court order, the court may, in imposing monetary sanctions, order that the monetary sanctions be paid to the non-appropriated fund of the court.

CivLR 83.1(a-b).

The Ninth Circuit utilizes the "lodestar" method for assessing reasonable attorney's fees. <u>Gonzalez v. City of Maywood</u>, 729 F.3d 1196, 1202 (9th Cir. 2013).  Under the "lodestar" method, the number of hours reasonably expended is multiplied by a reasonable hourly rate. <u>Id.</u>  Reasonable hourly rates are determined by the "prevailing market rates in the relevant community."  <u>Sorenson v. Mink</u>, 239 F.3d 1140, 1145 (9th Cir. 2001). However, the amount of attorney's fees to be awarded is ultimately within the discretion of the trial court. <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 69 (9th Cir. 1975) (citation omitted).  In the Ninth Circuit, courts are required to consider some or all of the following twelve criteria in determining an award of attorney's fees:

1
2
3
4
5

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6)  whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

6
7

Id. at 70.

8
9
10
11
12

While the district court has discretion in determining the amount of a fee award, it must "provide a concise but clear explanation of its reasons for the fee award." Carter v. Caleb Brett LLC, - - - F.3d - - -, (9th Cir. 2014), 2014 WL 905767, *1-2 (citation omitted). "A mere statement that a court has considered the Kerr guidelines does not make a decision within the court's discretion." Id.

13

2.    Analysis

14
15
16
17
18
19
20
21
22
23
24
25
26

As indirectly acknowledged by Plaintiff in her opposition, there was and is no legal basis for her refusal to permit the videotaped deposition to occur on July 25, 2014, as it was properly noticed.  Moreover, Plaintiff refused to follow the Federal Rules of Civil Procedure and state her objections to the videotaped deposition and then proceed forward with the videotaped deposition.  Finally, Plaintiff followed her meritless refusals by flouting this Court's instruction to proceed with the videotaped deposition.  MTC at Exh. F. at 8-12. Plaintiff argues that she was not in contempt because "there never was an order in this case."  Oppo. at 19.  Plaintiff bases her position on the fact that Judge Major's law clerk stated that  Judge Major's words were an "oral instruction over the phone" in response to Mr. Smee's question "[d]id she order that?"  Id.;  MTC at Exh. F. at 8.  Mr. Smee alleges that "[i]f Judge Major's clerk stated that Judge Major had ordered the deposition to go forward that day, [he] would have complied as an officer of the Court."  Smee Decl. at 5. The Court is not persuaded by Mr. Smee's statement or argument.

27
28

Mr. Smee further argues that Judge Major's instruction that the deposition should proceed was unclear because "[t]he law clerk did not specify when the videotaped

1   deposition should go forward." Oppo. at 10 (emphasis in original); Smee Decl. at 4-5.

2   Initially, this statement is not true. As set forth in the transcript, the law clerk stated that

3   Judge Major "gave [her] instructions over the phone to go forward with the videotape

4   deposition **today**. And if there are any motions regarding its admissibility in the future, the

5   Court will address them. **But as of now**, the instructions are to go forward with the

6   videotaped deposition." MTC at Exh. F at 8 (emphasis added). Secondly, given the context

7   of the call and instruction, the Court finds no basis for Mr. Smee's statement that he "it was

8   less than clear to [him]" when Judge Major wanted the deposition to go forward. Smee

9   Decl. at 5; <u>see also</u> Plaintiff's Decl. at 5 ("Mr. Smee exited and said that the judge had

10  indicated that the deposition needed to go forward, but that he did not feel comfortable

11  moving forward"). Given the clear language used by this Court's law clerk, Mr. Smee's

12  contention that he did not violate this Court's order because "the law clerk did not provide

13  any clarity as to when the videotaped deposition should proceed" is untrue and incorrect.

14  Oppo. at 19.

15       Rule 30(d)(2) provides that a court "may impose an appropriate sanction - including

16  the reasonable expenses and attorney's fees incurred by any party - on a person who

17  impedes, delays, or frustrates the fair examination of the deponent." <u>Bicek</u>, 2013 WL

18  5673418 at *6-8. Here, Defendant seeks to recover attorney's fees and expenses in

19  connection with attending Plaintiff's failed deposition and for subsequently filing a motion

20  to compel Plaintiff's deposition. Specifically, Defendant seeks attorney's fees of $1,128.30,

21  videographer fees of $200, court reporter fees of $250, and payment to the Court's non-

22  appropriated fund "in an effort to cease continuing discovery abuses in this case and others.

23  MTC at 10-11. In support, Ms. Schweiner states that she spent eight hours drafting the

24  motion to compel and supporting documents, three hours attending the failed deposition

25  and meeting and conferring with Mr. Smee, and an anticipated additional four hours to

26  review and respond to Plaintiff's opposition for a total of fifteen hours. Schweiner Decl. at

27

28

1    3.  Ms. Schweiner states that her hourly rate is $75.22.  Id.[5]

2         The Court finds that only several of the twelve factors set forth in Kerr are relevant

3    to the Court's analysis in this case.  Kerr, 526 F.2d at 69.  The Court finds that it was

4    reasonable for Ms. Schweiner to spend a total of twelve hours to prepare and file the

5    motion to compel, supporting declaration, reply and supporting declarations.  With respect

6    to factors three (3) through eight (8), there is no evidence before the Court demonstrating

7    that these factors are relevant in making a sanctions determination under Rules 30 and/or

8    37 in this case.  Similarly, factors ten (10) and eleven (11) do not appear to be relevant to

9    this Court's analysis.  As to the ninth factor, the "experience, reputation, and ability of the

10   attorneys," Ms. Schweiner is an Assistant United States Attorney for the Southern District

11   of California and has been admitted to the state bar since 1997.   She is an active member

12   of the state bar and has no public record of administrative actions.  Ms. Schweiner's billing

13   rate is $72.22.  The Court finds this rate is extremely low given her experience and other

14   billing rates used by attorneys in the San Diego legal community.  Mr. Smee works for the

15   law firm of Grady & Associates.  The firm has multiple offices in San Diego and Mr. Smee

16   has been a member of the State Bar of California since 2003 and has no public record of

17   administrative actions.  Finally, considering factor twelve (12) other courts in this district

18   have found similar and even greater awards to be reasonable.   Hence, even after

19   considering the factors set forth in Kerr, the Court finds that the requested sanctions are

20   reasonable.  See Rawcar Group, LLC, Case No. 13cv1105-H(BLM).

21   ///

22   ///

23   ///

24   ///

25   ///

26

27        [5]$75.22 * 15 = $1128.30.  Ms. Schweiner did not provide the exact time that she spent preparing the
28   Reply and supporting documents.  Based upon its review of the Reply and supporting documents, the Court
     finds that four hours is a reasonable amount of time.

1   　　　For the foregoing reasons, Defendant's motion for attorney's fees and the cost of the

2   videographer and court reporter is **GRANTED**.  Plaintiff's request that the Court order

3   payment to the Court's non-appropriated fund is **DENIED**.  Plaintiff and her counsel, Mr.

4   Smee, are hereby ordered to reimburse Defendant in the amount of $1,578.30[6] on or

5   before **August 29, 2014**.  Plaintiff's counsel, Mr. Smee, is ordered to file a declaration

6   verifying said payment no later than **September 5, 2014**.  Failure to comply with this

7   order may result in the imposition of additional sanctions.

8   　　　**IT IS SO ORDERED.**

9

10  DATED:  August 8, 2014

11

12  　　　　　　　　　　　　　　　　　　　BARBARA L. MAJOR

13  　　　　　　　　　　　　　　　　　　　United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

[6]$1128.30 + 200 + 250 = $1,578.30.